# EXHIBIT B2

**City and County of San Francisco**



**Department of Public Health**

**Laguna Honda Hospital**
**Human Resource Services**
**Operations Division**

December 23, 2003

Susie Abram
5145 Twincreek Ct.
Antioch, CA 94531

Dear Ms. Abram,

This is to inform you that your Request for Leave from <u>November 19, 2003 through February 1, 2004</u> is approved.

Your leave will be designated as Family Medical Leave. The Family Medical Leave Act (FMLA) entitles an eligible employee with up to twelve (12) work weeks of job-protected leave in any 12-month period.

1)   For the birth of a child and to care for such child;

2)   For the placement of a child with an employee for adoption or foster care;

3)   For the care of a spouse or an immediate family member with a serious health condition; or

4)   For the employee's own serious health condition that makes the employee unable to work or perform any one of the essential functions of his or her position.

Employees absent without leave for five (5) consecutive days may be processed as an Automatic Resignation, in accordance with CSC Rules or a collective bargaining agreement.

The Separation Report enclosed is required by Civil Service as a record of all types of separations or leaves (over five days) from City service.

If you have any questions regarding this matter, please contact the Human Resources Office at (415) 759-3388 or the Payroll Office at (415) 759-3387.

Sincerely,

Irene Guerrero
Senior Personnel Clerk

cc: Employee's File



(415) 759-3388               375 Laguna Honda Blvd.          San Francisco, CA 94116
(415) 759-3365 (Fax)

**CCSF 00216**

**City and County of San Francisco**



VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**Department of Public Health**

Laguna Honda Hospital
Human Resource Services
Operations Division

July 19, 2004

Susie Abram
5145 Twincreek Court
Antioch, CA  94531

Dear Ms. Abram:

Human Resource Services was advised by Cambridge Integrated Services Group, Inc., third party administrator for worker's compensation, that your worker's compensation claim with a work related injury/illness date of November 13, 2003 was denied.  A denial letter was issued to you from Cambridge on February 11, 2004 (see attached).  Also, Human Resource Services was advised by Mr. Martin Lum, Department of Public Health, ADA Coordinator, that you chose not to pursue your request for reasonable accommodation and your file has been closed (see attached).

Since Cambridge has denied your worker's compensation claim and your ADA request for reasonable accommodation is closed, your supervisor, Mr. William Frazier, is expecting you to return to work on Monday, August 2, 2004 at your regularly scheduled time of 12:30 PM to 9:00 PM.  Please note should you fail to report to work, you will be marked absent without leave (AWOL).  Employees absent without leave for five (5) consecutive workdays may be processed as an Automatic Resignation per Civil Service Rule 121.

It is extremely important that you contact Mr. William Frazier at (415) 759-3339 by 4:00 PM, Friday, July 23, 2004 to discuss your return to the department.

Sincerely,

Arleen Lum
Senior Personnel Analyst

Attachments - Cambridge Denial Letter and Closure of File for Request for Reasonable Accommodation

cc:   Susie Abram – U. S. Regular Mail        William Frazier        Cambridge    Employee File
      Willie Ramirez                         Martin Lum             Tamara Davidson

(415) 759-3388
(415) 759-3365 (Fax)        Attachment 1 (1 of 5 pages)        San Francisco, CA  94116

CCSF 00197

APR-23-2004   15:17

DEPT. OF PUBLIC HEALTH


**Cambridge**
Integrated Services Group, Inc.
P.O. Box 26896, San Francisco, CA, 94126

P.01/01

February 11, 2004

RECEIVED

04 APR 26 M 8 30

PAYROLL OFFICE-LHH
DEPT. OF PUBLIC HEALTH

Ms. SUSIE ABRAM
5145 Twincreek CT.
ANTIOCH, CA 94531

Date of Injury:        11/13/2003    Claimant:      SUSIE ABRAM
Claim Number:        042222         Employer:      Community Health
Network

## NOTICE OF DENIAL OF CLAIM
## FOR WORKERS' COMPENSATION BENEFITS

Cambridge Integrated Services Group, Inc. is handling your Workers'
Compensation Claim on behalf of Community Health Network. This
notice is to advise you of the status of your Workers' Compensation
Claim for your injury of FACE/HEAD.

After careful consideration of all available information, we are denying
all liability for your claim of injury because we have no medical
evidence to substantiate that you sustained an industrial injury. Also,
you failed to attend our AOE/COE evaluation with Dr. Clyde Martin on
2/2/2004.

The State of California requires that you be given the following
information: If you disagree with the decision, you may consult with a
State Information and Assistance Officer at 1-800-736-7401, or call
your local Information and Assistance Officer at ( 415) 703 5020. You
may also consult with and be represented by an attorney, and / or
apply to have your case heard by the Workers' Compensation Appeals
Board.

If you have any questions, please call me at (800)554-3714.

Sincerely,

Tristane Santa Lucia,
Claims Adjuster

cc:    Nancy Omahen - Department of Public Health
       San Francisco General Hospital – OHS
       Annette Jagers, RN - SFGH – OHS
To →   LHH payroll – faxed to Patti 4/23/04        Page 2 of 5 pages

CCSF 00198

**City and County of San Francisco**



**Department of Public Health**



June 17, 2004

<u>VIA CERTIFIED AND U.S. MAIL</u>

Ms. Susie Abram
5145 Twincreek Court
Antioch, CA  94531

RE: <u>Request for Accommodation</u>

Dear Ms. Abram:

I write to follow up on my letter dated April 30, 2004 and June 1, 2004 regarding your Reasonable Accommodation Request. I have attached a copy of my previous letter for your convenience.

To date, you have not contacted me to schedule a meeting to discuss your request. If you would still like to pursue your request, please call me at 415 554-2599 at your earliest convenience. If I do not hear from you by June 28, 2004, I will understand that you are no longer interested in pursuing your request for accommodation, and I will close the file accordingly. Please know that you may always restart this process by contacting me by phone or in writing.

Thank you for your anticipated cooperation.

Sincerely,

Martin Lum
ADA Coordinator

encl: prior letter
cc: Reasonable Accommodation File

cc: N. Nickens – EEO
    A. Lum – LHH-HR
    V. Wells – OSH

Page 3 of 5 pages

RECEIVED 2004 JUN 18 AM 11:24
HUMAN RESOURCE SERVICES
DEPT OF PUBLIC HEALTH-SF
LAGUNA HONDA HOSPITAL

CCSF 00199

**City and County of San Francisco** 

**Department of Public Health**

June 17, 2004

<u>**VIA CERTIFIED AND U.S. MAIL**</u>

Ms. Susie Abram
5145 Twincreek Court
Antioch, CA 94531

RE: <u>Request for Accommodation</u>

Dear Ms. Abram:

I write to follow up on my letter dated **April 30, 2004** and **June 1, 2004** regarding your Reasonable Accommodation Request. I have attached a copy of my previous letter for your convenience.

To date, you have not contacted me to schedule a meeting to discuss your request. If you would still like to pursue your request, please call me at **415 554-2599** at your earliest convenience. If I do not hear from you by June 28, 2004, I will understand that you are no longer interested in pursuing your request for accommodation, and I will close the file accordingly. Please know that you may always restart this process by contacting me by phone or in writing.

Thank you for your anticipated cooperation.

Sincerely,

Martin Lum
ADA Coordinator

encl: prior letter
cc: Reasonable Accommodation File

cc: N. Nickens – EEO
    A. Lum – LHH-HR
    V. Wells – OSH

RECEIVED 2004 JUN 18 AM 11:24
DEPT OF PUBLIC HEALTH-SFS
LAGUNA HONDA HOSPITAL

San Francisco Department of Public Health
Office of Equal Employment Opportunity
And Cultural Competency



**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
April 30, 2004

Ms. Susie Abram
5145 Twincreek Court
Antioch, CA 94531

Dear Ms. Abram:

It is the understanding of this office that you may have a medical condition that could possibly necessitate a reasonable accommodation pursuant to both the Americans with Disabilities Act (ADA), and California Fair Employment and Housing Act (FEHA).

The ADA and FEHA are designed for persons with disabilities to contique in their employment with, or without, a reasonable accommodation. To be considered for a reasonable accommodation, an individual must have a qualifying disability. Under state and federal guidelines, a disability must limit a major life activity. For example, caring for oneself, performing manual tasks, breathing, walking, seeing, hearing, and working are considered major life activities.

If qualified, the reasonable accommodation process could include exploring placement options for all vacant positions in the department for which you meet the minimum qualifications, and for which you could perform the essential functions with, or without, a reasonable accommodation.

If you would care to explore your options under the Americans with Disabilities Act, please contact me at (415) 554-2599 by May 30, 2004.

Sincerely,

Martin Lum
ADA Coordinator

cc:    Norman Nickens
       Arleen Lum

Page 5 of 5 pages

RECEIVED
2004 MAY -3 AM 11:45
HUMAN RESOURCE SERVICES
DEPT OF PUBLIC HEALTH-SF
LAGUNA HONDA HOSPITAL

L:\Martin\Disability\ML\ADALetter\Abram, S.doc

San Francisco Department of Public Health, Office of Equal Employment Opportunity
And Cultural Competency, 101 Grove Street, Room 214, San Francisco, CA  94102
Telephone:  415-554-2599      Fax:  415-554-2594

CCSF 00201

## O. THE RIGHT TO PRIVACY IN THE WORKPLACE

158. Employees subject to this Agreement shall have a reasonable expectation of privacy and to be secure from unreasonable searches and seizures on his/her person and his/her work area to the extent provided by law.

## P. PEACE OFFICER STATUS

159. By October 1, 2003, the PUC agrees to initiate a study to determine whether 7470 Watershed Keepers and 7270 Watershed Keeper Supervisors are eligible for peace officer status and whether and to what extent the PUC should engage with County and/or State law enforcement officials to request that individuals in these classes be deputized as peace officers under the California Penal Code. This study shall be completed by June 30, 2004, and the results of the study shall be made available to the Union. The City and the Union shall meet and confer with regard to any actions taken as a result of the study to the extent such actions are within the mandatory scope of bargaining.

## Q. AUTOMATIC RESIGNATION

160. Absence from duty without proper authorization for any period of time up to and including five (5) or less working days may be cause for disciplinary action by the Appointing Authority.

161. Absence from duty without proper authorization in excess of five (5) continuous working days may constitute abandonment of the position and may be recorded as an automatic resignation. The employee shall be notified by certified mail of this action, prior to the effective date of the automatic resignation.

## R. UNSATISFACTORY RESIGNATION

162. The City agrees that in the event an employee resigns with services designated as unsatisfactory, the City shall not provide information to any inquiry or referral regarding the resignation other than that the employee has resigned, except as required by law.

## S. ADDITIONAL PART-TIME EMPLOYMENT

163. There shall be no limit on outside employment, or service as an independent contractor, imposed upon any employee covered by this agreement, unless such employment can be shown to create a conflict of interest with his/her City employment.

## T. UNIFORMS AND EQUIPMENT

164. The City shall provide uniforms as specified below for the workers in the listed classifications:

2708 Custodian (who currently receive uniforms)
3202 Locker Room Attendant               )
3302 Vendor                                       )        Rubber boots and gloves
3280 Assistant Recreation Director   )
3284 Recreation Director                   )        Windbreakers and
3287 Assistant Recreation Supervisor)        patches only if
7270 Watershed Keeper Supervisor              assigned to playground.
7470 Watershed Keeper
8201 Adult Crossing Guard
8202 Security Guard

San Francisco Department of Public Health
Office of Equal Employment Opportunity
And Cultural Competency



**CERTIFIED MAIL - RETURN RECEIPT REQUESTED - 2nd NOTICE**
June 1, 2004

Ms. Susie Abram
5145 Twincreek Court
Antioch, CA  94531

Dear Ms. Abram:

This office sent you a letter on April 30, 2004 inviting you to contact us regarding your rights pursuant to the Americans with Disabilities Act (ADA), and California Fair Employment and Housing Act (FEHA).   As we did not receive a response to our previous letter, we are writing you again to invite you to contact us if you are interested in exploring options available to you under the ADA/FEHA.

The ADA and FEHA are designed for persons with disabilities to continue in their employment with, or without, a reasonable accommodation.   To be considered for a reasonable accommodation, an individual must have a qualifying disability.   Under state and federal guidelines, a disability must limit a major life activity.   For example, caring for oneself, performing manual tasks, breathing, walking, seeing, hearing and working are considered major life activities.

If qualified, the reasonable accommodation process could include exploring placement options for all vacant positions in the department for which you meet the minimum qualifications, and for which you could perform the essential functions with, or without, a reasonable accommodation.

If you would care to explore your options under the Americans with Disabilities Act, please contact me at (415) 554-2599 by June 16, 2004.

Sincerely,

Martin Lum
ADA Coordinator

cc:    N. Nickens - EEO     A. Lum - LHH HR     V. Wells - OSH     M. Fleming  - LHH ADM

San Francisco Department of Public Health, Office of Equal Employment Opportunity
and Cultural Competency, 101 Grove Street, Room 214, San Francisco, CA 94102
Telephone:  (415) 554-2599     Fax:  (415) 554-2594
E-Mail:  Martin_Lum@dph.sf.ca.us

CCSF 00191

**City and County of San Francisco**

**Department of Public Health**



Via Certified Mail Return Receipt Requested

**Human Resource Services**
**Labor Relations Division**
(415) 759-3388
FAX (415) 759-3365

August 9, 2004

Susie Abram
Health Worker III
5145 Twincreek Court
Antioch, CA 94531

RE: Notice of Intent to Record Automatic Resignation

Dear Ms. Abram:

This is to inform you of the Department of Public Health, Laguna Honda Hospital's intent to record your Absences Without Approved Leave (AWOL) as an automatic resignation from your Class 2587 Health Worker III position. On July 19, 2004, the Department informed you in writing that you need to report to work on August 2, 2004, following the denial of your Workers' Compensation claim and your failure to respond to three (3) attempts by the Department to engage you in the American with Disabilities Act (ADA) and the California Fair Employment and Housing Act (FEHA) process (Attachment 1).

You have been out since November 2003 and on February 1, 2004, you exhausted your Family and Medical Leave. On the July 19th letter, you were instructed to either report to work or contact your department head, William Frazier and you failed to do so. You were also notified that your failure to report to work or contact your supervisor would result in you being marked AWOL and that the Automatic Resignation process would be initiated.

Article II, Section Q, Paragraph 161 of the Collective Bargaining Agreement for SEIU, Local 790 states: "Absence from duty without proper authorization for any period in excess of five (5) continuous working days may constitute abandonment of the position and may be recorded as an automatic resignation. The employee shall be notified by certified mail of this action, prior to the effective date of the automatic resignation" (Attachment 2).

Please be informed that your absences (AWOL) from August 2, 2004 to August 6, 2004, constitute an abandonment of your position and will be recorded as an automatic resignation. The Department will file for your automatic resignation unless you return to duty by August 23, 2004. If you fail to report to work by August 23, 2004, or provide an appropriate relational of your unexcused absences, the Department will assume that you have no intention to return to work and your automatic resignation will be filed effective close of business on August 23, 2004.

If you have any questions, please contact me at 415-759-3008.

*Willie Ramirez*
Willie Ramirez
Senior Personnel Analyst

Attachments:    1. Letter of July 19, 2004 from Arleen Lum with attachments (5 pages)
                2. SEIU Contract Language (1 page)

cc:    Susie Abram, regular mail
       Personnel file

Ruben Garcia, SEIU Local 790
William Frazier, LHH

Laguna Honda Hospital
375 Laguna Honda Boulevard
San Francisco, CA 94116

CCSF 00195



CCSF 00196

# City and County of San Francisco



**Department of Public Health**

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**Human Resource Service**
**Labor Relations Division**
(415) 759-3388
FAX (415) 759-3369

August 25, 2004

Susie Abram
Health Worker III
5145 Twincreek Court
Antioch, CA 94531

Dear Ms. Abram,

We are in receipt of your attorney's letter of August 20, 2004, indicating that you are on medical leave. However, our records indicated that your leave under the Family and Medical Leave Act (FMLA) expired on February 1, 2004, and you never engaged the Department in the American with Disabilities Act (ADA) process, which may make you eligible to extended your medical leave beyond your FMLA entitlement.

It is noted the Department twice (April 30, 2004 and June 17, 2004) notified you in writing of your rights to pursue coverage under the ADA process, but you never responded. Your failure to respond led the Department to issue the notice dated August 9, 2004, of intent to file the automatic resignation since the Department has an operational necessity to continue to serve residents.

We would like to engage you in the ADA process one more (final) time before we proceed with processing the automatic resignation. This will enable the Department to evaluate what reasonable accommodation might be necessary to enable you to perform the essential functions of your Health Worker III position. Another reasonable accommodation could be to continue your leave until a specified period of time, but before this can be explore, you need to complete the packet.

Attached is the ADA packet. You are welcome to contact Martin Lum the ADA Coordinator who can assist you with the process. You can reach him directly at (415) 554-2599. Please complete the ADA packet and submit it to Mr. Lum no later than September 17, 2004.

Should you fail to complete the packet by September 17, 2004, we will assume that you are not interested in engaging the Department in the ADA process and the automatic resignation process will be reinitiated because you will continue to be in an AWOL (Absent Without Official Leave) status.

Should you have any questions, you can contact me directly at (415) 759-3008.

Sincerely,

Willie Ramirez
Senior Personnel Analyst

Attachment – ADA Packet (10 pages)

cc:    William Frazier, LHH
       Martin Lum, ADA Coordinator
       Personnel File



*Laguna Honda Hospital*
*375 Laguna Honda Boulevard*

**CCSF 00129**

Date Rec'd:

# REQUEST FOR REASONABLE ACCOMMODATION

Last Name _____ First Name _____

Address _____ City _____ Zip _____

Social Security Number _____

Work Phone _____ Home Phone _____

It is the policy of the City and County of San Francisco to provide reasonable accommodations to qualified individuals with disabilities in accordance with the Americans with Disabilities Act and the Fair Employment and Housing Act. You may be required to provide documentation in support of your request.

**1. Current Position:**

Class: _____ Title: _____

Dept. _____ Section: _____

**2. Reasonable Accommodation Request:**

What type of accommodation do you need?

☐ Modified work schedule       ☐ Removal of communications barrier
☐ Change in procedure          ☐ Purchase of assistive services        ☐ Job Restructuring
☐ Purchase assistive device    ☐ Removal of architectural barrier       ☐ Reassignment
                                                                          ☐ Other:-

Please describe the accommodation:

Please explain how you believe this accommodation will enable you to perform the essential functions of your position:

**3. Essential Job Duties of Your Position:**

Please identify the essential job duties (do not include marginal duties) of your position for which you are requesting an accommodation.

1. _____
2. _____
3. _____

**4. Health Care Provider:**

Please provide us with the name of your health care provider(s) who can assist in this request. If you have additional providers who also have information on this matter, please list that information on the back of this sheet:

Name: _____

**CCSF 00130**

Address: _____

Phone: _____  Specialty: _____

Name: _____

Address: _____

Phone: _____  Specialty: _____

**5. Major Life Activities:**

Please check those major life activities you believe to be limited by your medical condition(s):

☐ Walking     ☐ Breathing     ☐ Seeing     ☐ Caring for Oneself
☐ Talking     ☐ Hearing       ☐ Learning   ☐ Performing Manual Tasks     ☐ Working
                                                                          ☐ Other:

Please describe how the above activities are limited:

**6.** Is your medical condition temporary?  ☐ Yes  ☐ No

   If yes, please state the expected duration: _____

**7.** Are you currently working?  ☐ Yes  ☐ No

   If no, please specify the type of leave currently approved: _____

   If no, when do you expect to return to work? _____

**8.** Have you applied previously for a reasonable accommodation within the City?

   ☐ Yes  ☐ No    If yes, please explain the status/circumstances:

   _____

   _____

   _____

   _____

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

I hereby certify that I believe I am a qualified individual with a disability as defined by the law. I have received and reviewed the information brochure and require an accommodation in order to perform the essential functions of my position. I understand that a detailed review of my disability status will be required and I agree to cooperate fully in this process. I further understand that if my request is granted, I am obligated to report any changes in my disability status which may require a re-evaluation of this request. Granting of this request does not signify approval of any future reasonable accommodation request for any other position within this department or any other department within the City and County of San Francisco.

_____          _____
Signature                        Date

ity and County of San Fran     sco                    Departי    ,nt of Human Resou

ANDREA R. GOURDINE
HUMAN RESOURCES DIRECTOI

## MEDICAL AUTHORIZATION AND RELEASE

TO WHOM IT MAY CONCERN:

Pursuant to my request for reasonable accommodation under the Americans with Disabilities Act and the Fair Employment and Housing Act, my employer is authorized to determine whether I have a physical or mental impairment which limits a major life activity, to determine what restrictions I have that impact the duties of my position and to evaluate the effectiveness of possible reasonable accommodations.

I hereby authorize and direct you, your operation, its Custodian of Records and/or person in your employ to release medical information relating to my request for reasonable accommodation to my employer, in the format of the Health Care Provider Certification Form provided by my employer (pursuant to the Medical Confidentiality Act, Civil Code Section 56, et seq). This medical information may be released to any authorized representative of the City and County of San Francisco bearing this release or a photocopy thereof, in order to evaluate my request for reasonable accommodation.

I do hereby request that the Health Care Provider Certification Form be completed as fully and completely as possible.

I do hereby release and hold harmless you, your organization or company, your officers, agents, employees, or independent contractors from any liability or damages, and I do hereby waive all claims or causes of action against you, your organization or company, your officers, agents, employees or independent contractors, which may result from furnishing the requested information.

This authorization to release my medical records will expire ninety (90) days after the date signed. I have been advised that I have the right to receive a copy of this authorization.

Name (print): _____ DOB: _____ SSN: _____

Address: _____

_____ Phone (w): _____
Phone (h): _____

Class/Title: _____ Department: _____

Signature _____

Date _____

DHR 7-32 (12/00)

CCSF 00132

# PHYSICAL CAPACITIES EVALUATION

EMPLOYEE NAME: _____

SOCIAL SECURITY #:_____ Date:_____

How long has the employee had this medical condition ? _____

/__/ The employee can return to work with RESTRICTIONS

/__/ The employee can return to work with NO RESTRICTIONS

2) What are the employees specific restrictions regarding:

♦ bending _____

how often _____, what duration, _____

from what position _____

♦ lifting/carry _____

0-5 lbs. ____ 6-10 lbs. ____ 11- 15 lbs. ____ 16- 20 lbs. _____ other _____

♦ reaching _____

can the employee reach above shoulder level ? _____yes ____no

below shoulder height ? ___yes ___no

♦ standing _____

What is the capacity for standing out of an eight our day ? Total hrs. ____?

½ hr. ____ 1 hr. ____ 2 hr. ____ 3 hr. ____ 4 hr. ____ 5 hr. ____ 6 hr. ____ 7 hr. ____ 8 hr. ____

♦ sitting capacity for an eight hour day ?  Total hrs. ___ ?

____ 1 hr. ____ 2 hr. ____ 3 hr. ____ 4 hr. ____ 5 hr. ____ 6 hr. ____ 7 hr. ____ 8 hr. ____

♦ walking: _____

for how long ? _____ , under what conditions ? _____

♦ climbing: _____

CCSF 00133

under what conditions ? _____ , to what height ? _____

♦ squatting: _____

duration ? _____ how often ?_____

♦ pushing/pulling: _____

exertion level ? _____ how often ? _____

♦ kneeling: _____

♦ how often ? _____ duration ? _____

3) Do you have a current job description for the employee ? ____yes ____no
Current job description is attached _____.

4) Is the employee taking any medication that may effect her job performance or her
ability to do the job? If yes, what medication is she taking? _____

5) Is the employee's disability of a permanent or temporary nature? (Please circle)

Physician's Signature _____

Print Name _____

License # _____

Date _____

## PLEASE RETURN THIS FORM TO

**Casey Chatillon**
**ADA COORDINATOR**
**DEPT. OF PUBLIC HEALTH**
**101 GROVE STREET, # 214**
**SAN FRANCISCO, CA. 94102**
**(415) 554-2596      fax (415) 554-2594**

CCSF 00134

# HEALTH CARE PROVIDER CERTIFICATION FORM

The following individual has identified him/herself as your patient:

_____    _____    _____

Last                         First                        Social Security No./Patient ID

This person has requested your assistance in determining whether he or she is eligible for coverage under the Americans with Disabilities Act and the Fair Employment and Housing Act. This person is seeking to be classified as a "Qualified Individual with a Disability" under the law. Attached is the employee's medical release. Please complete this form to the best of your ability. Your evaluation should be based on your understanding of a particular position's functions and your patient's capability to perform those functions.

Date of your last examination of this individual: _____

## Major Life Activities

Does this person have a medical condition which limits one or more of his/her major life activities?

yes ☐    no ☐

If "yes", the major life activity/activities affected is/are:

☐ Walking    ☐ Talking    ☐ Breathing    ☐ Performing Manual Tasks    ☐ Seeing
☐ Working    ☐ Hearing    ☐ Learning    ☐ Caring for Oneself    ☐ Other: _____

Please describe how the above activities are limited:



## Medical Condition

Is this medical condition temporary?    Yes ____    No ____

If yes, please state the expected duration of this condition: _____

## Reasonable Accommodation Request

Please identify what type of reasonable accommodation you would recommend for this patient:

☐ Purchase of Assistive Device(s): _____
☐ Job Restructuring: _____
☐ Reassignment to Another Position: _____
☐ Removal of Architectural Barrier: _____
☐ Purchase of Assistive Services: _____
☐ Modified Work Schedule: _____

CCSF 00135

☐  Removal of Communications Barrier: _____
☐  Other: _____

_____

Is this accommodation necessary to this patient's medical condition?   ☐ yes    ☐ no
Explain: _____

_____

_____

Please indicate how this accommodation would enable this patient to perform the essential functions of his/her position: _____

_____

_____

_____

## Essential Functions Determination

Review and complete the attached essential functions guide of the employee's position. Please specifically identify if this person can perform each essential function.

_I, the undersigned health care provider, certify that the information provided concerning _____ is complete and accurate to the best of my knowledge. In signing this form, I understand and have agreed to answer in a timely manner, the employer's questions as to the basis of the statements made on this form. I understand that my cooperation is necessary for the employer to make an accurate decision on my patient's request for a reasonable accommodation under the Americans with Disabilities Act and the Fair Employment and Housing Act._

_____              _____
_Health Care Provider's Signature_                          _Date_

_____              _____
_Print Name_                                          _License No._

_Note_: If there is a need for further clarification on this information, you may be contacted by a personnel representative.

CCSF 00136



# EMPLOYEE INFORMATION SHEET REGARDING CCSF REASONABLE ACCOMMODATION PROCESS

The federal Americans with Disabilities Act (ADA) and California's Fair Employment and Housing Act (FEHA) prohibit discrimination, including harassment and retaliation, against qualified employees on the basis of disability. In accordance with the law, it is the policy of the City and County of San Francisco to provide equal employment opportunities to employees with disabilities. To ensure equal employment opportunity, the City will provide reasonable accommodation to the known physical or mental disability of a qualified individual, unless to do so would pose an undue hardship or a direct threat to the health or safety of others.

## WHO IS PROTECTED?

The law protects employees with <u>disabilities</u> who are <u>otherwise qualified</u> for the positions they hold, and can perform the <u>essential functions</u> of those jobs with or without <u>reasonable accommodation</u>.

A person with a <u>disability</u> is an individual who:

- has a physical or mental impairment that limits a major life activity; or
- has a record of such an impairment which is known to the employer; or
- is regarded by the employer as having, or having had, such an impairment; or
- is regarded by the employer as having, or having had, a disorder or condition that has no present disabling effect, but that may become a disability.

Impairments that require special education or related services are also disabilities.

A disabled employee is <u>otherwise qualified</u> if he or she meets the necessary prerequisites of the job, such as licenses, skill, experience, education, training, work experience and other job-related requirements.

<u>Essential Functions</u> are fundamental job duties of a position. They do not include marginal duties.

A <u>reasonable accommodation</u> is a modification or adjustment to a job, employment practice, or work environment that enables a qualified individual with a disability to enjoy equal employment opportunity. Examples of reasonable accommodation include, but are not limited to, making existing facilities accessible, acquiring equipment or devices, providing qualified readers, modifying work rules, or transfer to a vacant position.

## HOW DO YOU REQUEST REASONABLE ACCOMMODATION?                    CCSF 00137

- To request accommodation, you must notify your supervisor, personnel officer, ADA coordinator, or department head. As a general rule, it is your responsibility to inform your employer that an accommodation is needed. Your request may be made verbally or in writing. Once you have made your need for accommodation known, you will be provided with two forms: 1. <u>Request for Reasonable Accommodation</u>; and 2. <u>Medical Authorization and</u>

Release. You must complete and return these forms to your departmental ADA coordinator in order for your request to be processed.

- Once you have completed these two forms, the ADA coordinator will determine if you are a qualified individual with a disability and, if so, the effectiveness of any proposed reasonable accommodation. During this process, the ADA coordinator will meet with you to discuss your accommodation request and will update you periodically in writing regarding the status of your request.

- Unless your disability is obvious, your health care provider must submit a Health Care Provider Certification Form and Essential Functions Guide, which will be sent to your health care provider once you have submitted a signed Medical Authorization and Release form. All medical-related information shall be confidential, provided only on a need-to-know basis.

- To ensure that the reasonable accommodation process is completed as quickly as possible, please be sure that any completed forms are accurate and legible and returned as soon as possible.

- Throughout this process, you may be represented by your union representative, attorney or any other third party.

- It is your responsibility to inform your supervisor or ADA coordinator should either your condition or the nature of your job change, such that any accommodation provided needs to be modified or is no longer necessary.

## COMPLAINT PROCEDURE

Should a dispute arise regarding the reasonable accommodation process, you may file a complaint with the City's Human Resources Director, whose decision is subject to review by the Civil Service Commission.

You may also file a discrimination complaint with any of the following:

- your Department's or the City's Equal Employment Opportunity Unit
- your union under the employee grievance procedure
- California's Department of Fair Employment and Housing
- the federal Equal Employment Opportunity Commission.

## RESOURCES

- ADA Coordinator or Personnel Officer in your department
- City's EEO Division, DHR, 44 Gough St, 557-4832 or 557-4838, TTY 775-9498
- CA Department of Rehabilitation, 185 Berry Street, 904-7100, TDD 904-7114
- DFEH, 30 Van Ness Avenue, 800-884-1684, TTY 916-324-1678
- EEOC, 901 Market Street, 356-5100 or 800-669-4000, TTY 356-5098 or 800-669-6820

CCSF 00138

# CITY AND COUNTY OF SAN FRANCISCO
# REASONABLE ACCOMMODATION PROCEDURES

## I.  POLICY

The federal Americans with Disabilities Act (ADA) and California's Fair Employment and Housing Act (FEHA) prohibit discrimination, including harassment and retaliation, against qualified applicants and employees on the basis of disability.  The prohibition covers many aspects of the employment process, including, depending on the circumstances:

- applications
- medical examinations
- terminations
- compensation

- leaves
- promotions
- testing
- hiring

- disciplinary actions
- evaluations
- benefits

In accordance with the law, it is the policy of the City and County of San Francisco to provide equal employment opportunities to qualified individuals with disabilities.  To ensure equal employment opportunity, the City is committed to providing reasonable accommodation to the known physical or mental disability of a qualified individual, unless to do so would pose an undue hardship or direct threat to the health or safety of others.

1

CCSF 00139

RECEIVED

00 JAN 24  PM 2: 28

Refused
To
SiGN.

# City
# and
# County
# of
# San Francisco

# Performance Appraisal Report



CCSF 00045

## Identification

Name: Susie  Abram
Class/Title: 2587 Health Worker III
Status: PCS Reason for Report: Annual
1st. Date in Class: 4/5/82 Probation Ends:
From: 12/31/98 To: 12/30/99  Date Mailed: 10/29/99

| NAME | | 3 STATUS | |
|---|---|---|---|
| | 6 REASON FOR REPORT | | 7 1st DATE IN CLASS |
| PORT | | | |
| | FO | | 9 PROBATION ENDS |

(rv. 1986)

# I. Duties and Responsibilities/Performance Criteria

1) Developing, implementing, coordinating, and supervising individual and group activities for residents on ward D3. Assisting three other staff in providing program and documentation coverage for shared ward F3.

2) Interviewing and assessing residents for appropriate activities.

3) Providing documentation for residents' medical record (i.e., Initial Assessment, Re-admission assessment, Annual Assessment, quarterly notes, care plans, monthly attendance records, Transfer Notes, RAP Notes, and other related documents as required.

4) Preparing monthly activity calendars for D3, and rotated duty for F3 calendar preparation.

5) Supervising assigned volunteers as required.

6) Participating in I.D.T. meetings.

7) Attending and participating in monthly departmental staff meetings, and all required inservice trainings (i.e., departmental, and hospital wide).

8) Participating in any assignments as required by the Activity Therapy Department

## DEFINITIONS OF RATINGS

Use the following definitions to identify employee's level of performance when rating factors in Sections II, III and IV.

**COMPETENT AND EFFECTIVE**

Performs assigned duties at an acceptable level through demonstrated application of skills.

**EXCEEDS STANDARDS**

Performs assigned duties in a manner indicating exceptional understanding of essential functions. Results achieved are often better than expected of performance rated "Competent and Effective," but not of such uniqueness as to warrant an "Outstanding" rating.

**OUTSTANDING**

Performs assigned duties in a manner demonstrating mastery at every level of major responsibility. Results achieved are well beyond the level of performance rated "Exceeds Standards."

**DEVELOPMENT NEEDED**

Performance in one or more areas does not meet the requirement for a "Competent and Effective" rating. Improvement is required if acceptable results are to be achieved.

**UNACCEPTABLE**

Even under close direction, performance does not demonstrate the ability and/or willingness to produce required results.

Susie Abram – Health Worker III,  Class 2587
Performance Appraisal Period of 12/31/98 to 12/30/99

**ATTENDANCE & PUNCTUALITY**: Exceeds Standards have been met.  Five sick days were utilized during this yearly interval (i.e., 3/4/99, *4/6/99, 5/10/00, 9/4/99, *10/19/99); *two of which occurred after a weekend.  No "lates" were reported during this yearly interval.

**KNOWLEDGE OF JOB**:  Competent and Effective Standards have been met.  Susie's monthly activity calendar contains all required content areas required by Title 22 for scope of service.  Except on two occasions (June, July), each months calendars were posted by departmentally approved time lines (i.e., 9:30am for first day of each new month).  As noted in Quality of Work section, Susie's documentation content showed improvement during the course of this yearly interval.  Unit staff have also commented on Susie's efforts to implement the new care planning system which began this year.

Susie also demonstrates a working knowledge of the behavioral patterns of the residents of D3, and has been able to build one on one rapport with residents who will lash/strike out if they feel threatened or over stimulated.  Residents will smile when they see Susie arrive on the ward, which is further evidence of the trusting rapport they have with her.

Susie attends and participates in all required hospital wide inservices as scheduled, monthly departmental staff meetings, and unit I.D.T. meetings.

**QUANTITY OF WORK PERFORMED**: Exceeds Standards have been met.  Susie continues to be the primary Activity Therapist assigned to ward D3.  Susie also worked with three other staff members, covering a shared ward F3 (until the end of 8/99).  During 4/99-5/99 Susie also helped two other staff members cover documentation for G3, while the usual therapist assigned to that ward was on temporary leave.  This writer and departmental supervisor also excused Susie and a second staff member, from their usual evening program duties for 5/99, to allow them additional time to complete their documentation.

Susie also completed all required documentation for 9/99 during August, prior to her 9/99 scheduled vacation.  Susie was assisted in this process by this writer (i.e., Excusing Susie from F3 documentation for 9/99, requesting peer support in activity coverage for D3 during her absence, obtaining advanced copy of 9/99 M.D.S., and posting 10/99 D3 Activity calendar) and, departmental director (i.e., excusing Susie from evening program duties on 8/31/99 so she could utilize that time for documentation), and co-workers in the 3rd floor 'Pod' (i.e., Excused Susie from attendance at 8/26/99 'Pod' activity, so she could utilize that time for documentation, and provided activity coverage during her absence).

During this yearly interval Susie completed all assigned bus trips: 6/11/99 Hospital Wide – Fishing, and 9/3/99 Bay Meadows – Horse Racing.  Ward bus trips: 1/15/99 D3 – Shopping, 3/12/99 F3 Tour, 5/27/99 Red & White Fleet D3, 8/27/99 Fishing D3.

Susie also worked in planning and implementing the annual Black History Month Show, a hospital wide special event, on 2/26/99.  Susie has also worked with other departmental staff, in implementing "Tuesday Night Social" (except for 5/99 where she

-1-



was excused from these duties), as part of the Tuesday evening hospital wide programming.   Susie also attends monthly departmental staff meetings, ward meetings, and mandatory hospital wide inservices as scheduled.

**QUALITY OF WORK PERFORMED**: Competent and Effective Standards have been met. Chart Reviews for this interval demonstrate documentation which was timely, and followed format for type of document due seven out of nine times. Reviews dated:

5/13/99 Quarterly Note( i.e., Timely, Treatment plan in narrative and 4/27/99 care plan entry differed, subjective references in narrative and legibility concerns, care plan entry amended);

*6/8/99 30-Day Assessment (i.e., Timely, Treatment plan and care plan differ – contradict each other, L.I.S. past 30 days section left blank, Very accurate attendance sheets which showed records of activities offer but which resident refused);

*7/14/99 Annual (i.e., Timely, treatment plan and care plan differ slightly–Goals and interventions);

8/2/99 Transfer Note (i.e., timely, no inclusion that former c/p was reviewed within narrative, c/p narrative not included in note – amended on 8/11/99);

9/19/99 Quarterly Note F3 (i.e., Timely, objective behaviorally specific documentation, Treatment plan and care plan match);

9/19/99 Initial (i.e., Timely, Treatment Plan and C/p match);

10/20/99 Quarterly Note (i.e., Timely, subjective references, note content did not address goals from former care plan);

11/1/99 Annual (New M.D.S. format, Timely, treatment plan and care plan differ – 10/8/99 care plan re-done);

12/5/99 Quarterly Note (New M.D.S. format, timely).

Susie stated to this writer that she wanted to improve in this documentation area. Susie followed this comment through by initiating assistance, from this writer, as to how she could improve in this area (i.e., 5/13/99 reviewed Transfer Note format, and M.D.S. procedure on F3, 7/29/99 Susie requested assistance to ensure her R.A.P. notes were correct, 8/11/99 Reviewed Transfer Notes again, as well as informal meetings to go over monthly chart reviews).   As this yearly interval progressed, based on monthly chart reviews, Susie's compliance with documentation simultaneously improved.

Since the initiation of the new integrated care planning system on D3, nursing staff have also commented on Susie's initiative to learn this new format (i.e., comment made to this writer on 11/29/99). On time documentation performance, which was available for this yearly interval, is as follows:

|        | April 1999   | May 1999     | June 1999    | Total        |
|--------|--------------|--------------|--------------|--------------|
| D3     | 10-0=100%    | 9-3=67%      | 17-2=88%     | 36-5=86      |
| F3     | *3-0=100%    | *6-0=100%    | 2-0=100%     | 11-0=100%    |
| G3     | *2-0=100%    | *1-0=100%    | -0-          | 3-0=100%     |
| Total: | 15-0=100%    | 16-3=81%     | 19-2=89%     | 50-5=90%     |



CCSF 00048

| | July 1999 | August 1999 | September 1999 | Total |
|---|---|---|---|---|
| D3 | 10-0=100% | 10-1=90% | 13-0=100% | 33-1=97% |
| F3 | 2-0=100% | 4-2=50% | -0- (vacation) | 6-2=67% |
| Total: | 12-0=100% | 14-3=79% | 13-0=100% | 39-3=92% |

| | October 1999 | November 1999 | | |
|---|---|---|---|---|
| D3 | 8-2=75% | 9-1=89% | | 17-3=82% |

The above represents 106 documents due, 11 late, and 89% on time. These documentation statistics will not be weighted in rating this performance area, as the first quarters documentation information was not available from Susie's former supervisor.

Monthly activity calendars have contained full scope of title 22 requirements (i.e., social, cognitive, spiritual, program planning, etc...). Wall calendars, except for 7/1/99, posted by 9:30am of first day of new month.

**EFFECTIVENESS IN WORKING WITH OTHERS**: Competent and Effective Standards have been met. Susie demonstrates a adaptable leadership style, where she will adjust her energy level to the needs of the residents or activity. Examples of this were evidenced on 7/7/99 during a Horticulture activity with the third floor 'Pod'. During this Horticulture activity, Susie was working with a group of residents seated at a table. The setting was more quiet/moderate, and Susie adjusted her interactions accordingly (i.e., soft voice tone, addressing residents by name, focusing speech content on activity). On 7/22/99 Susie assisted other co-workers in leading a large group Exercise activity. Here Susie laughed along with specific residents, at appropriate intervals, and verbally encouraged them to participate. Susie addressed residents by their name, and spoke to them in an adult voice tone. This also shows the level of dignity and respect Susie shows to residents.

Susie demonstrates a caring one on one type of rapport with residents on D3. One example of this was recently demonstrated with a younger resident, who due to a behavioral incident, was no longer allowed to attend large group hospital wide activities (as decided by the unit I.D.T.). This resident was also not allowed to leave the ward after 8:00pm. Due to this residents now imposed limitation, Susie worked with the D3 I.D.T., to arrange alternative forms of Activity Therapy service delivery. Susie also worked with this writer to arrange a movie schedule, where by three evenings per week, the resident could remain on ward with something meaningful for the resident to do. Susie also met one on one with this resident, to assist the resident in identifying activity options for her.

During 'Pod' meetings for the third floor, Susie will offer to assist in whatever role is necessary to assist the group. She will assist other peers as a co-leader during the group, and will take her turn to lead the activity to balance out the work load. Whenever interpersonal conflicts have arisen, Susie has initiated a meeting with this writer, and has asserted her concerns in a respectful manner. Examples of this took place on 1) 4/21/99 where Susie expressed concerns regarding an interaction she had with another supervisor, and she just wanted to 'talk it out'; 2) 6/16/99 where Susie and a second peer discussed a schedule change, desired by the second peer, which would leave Susie alone to

-3-

CCSF 00049

implement the previously scheduled activity; 3) 12/1/99 where Susie informed this writer of a resident on the ward, who due to a behavioral outburst, was no longer allowed to attend hospital wide activities. In each of these interactions Susie was able to 1) Verbalize her concern in a respectful manner, listen to the concerns of other's involved, and 3) work toward a level of resolve.

## ADAPTABILITY TO WORK SITUATION:  Susie has maintained flexibility regarding program changes, when unforeseen events occur. This was evidenced during the Team of Eight training process, which began for D3 on 10/21/99. As on 10/28/99, Susie would inform this writer as to necessary calendar changes, which resulted from her mandatory attendance at these meetings.

This area of being able to re-set priorities initially presented as an area of concern regarding Susie's organizing/planning bus trips. Specifically a 6/11/99 fishing bus trip and related events regarding her obtaining fishing poles for same, and a 9/3/99 race track outing, initially scheduled as a day trip.

The events surrounding the 6/11/99 bus trip were discussed during a 6/22/99 meeting between Susie, this writer, the departmental director, and two other supervisors. Susie had initially reported to this writer, during a 6/10/99 meeting, that she had spoken to Bill about purchasing fishing poles, and that he "promised" to buy them. During this 6/22/99 meeting, the director did confirm he informed Susie that he would see what he could do about acquiring fishing poles, but made no promise to purchase them. Susie had also previously spoken to one of the other supervisors regarding the purchasing of poles, and that supervisor reported Susie was informed (by that supervisor) that it would be better if she located a fishing site that rented poles. The ultimate concern was two days prior to the trip, Susie did not have fishing poles secured, and had not yet contacted the agency. Susie had also reported the cost of the trip (for 14 residents) would be $70.00, at a break down of $5.00 per person. The final bill however was $110.00 (Susie later learned the fish were sold by weight, and not $5.00 per person).

The 9/3/99 Horse Racing Bus trip was scheduled to leave the hospital during the morning interval; however, the event needed to be changed on the day of the trip, as the race track did not provide day races. This information was learned on the day of the scheduled trip. The outing did occur, but needed to be re-scheduled by the bus trip supervisor to a night activity.

Each of these trips demonstrate Susie's creative thinking in bus trip ideas, and her willingness to implement them. The conflicting events which resulted, however, could have been avoided by maintaining clear communication with the agencies involved, confirming arrival times and costs, and securing her supplies prior to the trip.

Susie also needs to be mindful to plan/complete her monthly draft calendars in a more timely manner. Following a 6/10/99 staff meeting, an announcement was made that each Therapist would complete their monthly draft calendars, by the third Monday of each month for the preceding month. Each Supervisor would then have a two day period to review each calendar for content. In each of the following cases, including up to a two day review period for the supervisor, Susie left herself with less than a week to complete each monthly wall calendar (i.e., July draft initially presented on 6/22/99, and approved

-4-

CCSF 00050



on 6/23/99; Aug. draft initially presented on 7/24/99, and approved on 7/27/99; Sept. draft initially presented on 8/25/99, approved on 8/26/99; Nov. draft presented and approved on 10/28). This topic of handing in these calendar drafts, so close to the due dates of the large calendars, was discussed with Susie on 10/28/99 (where Susie handed in this initial draft at 11:45am, and stated she needed it approved for an activity she had planned that same afternoon). This timeliness issue did result in two wall calendars being posted late (i.e., June and July). A Development needed has resulted in this performance area, secondary to timeliness of calendar planning, and events noted above regarding organization of bus trips. I am fully confident in Susie's abilities to amend this area during her 2000 performance review.

   *As a special note; Susie was one of the first staff members, on the third floor team, to promptly sign up for her yearly bus trip assignment. This writer also complimented her for doing same on 10/24/99.

**USE OF MATERIALS AND EQUIPMENT**: Competent and Effective Standards have been met. Susie has demonstrated compliance with departmental policies for the reservation, use, and prompt return of program equipment. Holiday decorations used have met safety guidelines (i.e., avoiding glass or sharp objects). Yearly Christmas decorations have been taken down, after the holiday, and packaged according to departmental guidelines.

**SAFETY**: Competent and Effective Standards have been met. Susie is mindful to secure wheel chair brakes, when arriving at an activity, and will not attempt to push more than one wheel chair at a time. Susie is also mindful of D3 residents who require special approaches, as evidenced by talking with her and reading her documentation/care plans, and will implement same when interacting with residents.

   A specific incident, related to this area, occurred on 8/10/99. On that date, while interacting with a resident during an evening activity, Susie observed a needle on the floor laying next to the C3 resident's wheelchair. Susie did not mention her observation to the resident, as she did not want to draw attention to the needle's presence. At that point in time, Susie was called away, as two other residents began to argue. Susie separated the other two residents, but when she returned to the C3 resident, the needle was no longer on the floor. On 8/17/99 Susie reported this information to this writer, and how Susie had already fully informed D3 treatment staff of these events. Due to Susie's prompt reporting of these events to ward staff, and her rapport with one other D3 resident (who informed Susie as to the specific resident who obtained the needle, and what it's intended purpose - i.e., to relapse), the treatment team was able to plan an effective intervention plan for the third resident involved.

**EMPLOYEE STRENGTHS**: Susie's caring and respectful resident centered leadership style. Susie's willingness to improve/learn new documentation formats; to accept/request feedback regarding her performance with same. Susie's respectful assertive style when verbalizing her concerns.

-5-

CCSF 00051

To:    Susie Abrams A.T.
From:  Paul Croeger
Date:  10/3/99
Topic: Just a note...


Just a note to compliment you on your professionalism demonstrated yesterday.  I am glad you were able to verbalize your concerns in such a specific, and mutually respectful manner.  Good Work.

I also wanted to give you a copy of the June 1999 staff meeting minutes, which I referred to yesterday, regarding the due dates for the small calendars.


Thank You~

CCSF 00052

STAFF MEETING / JUNE 10, 1999
MINUTES

Bill announced the birthday celebration fund has $77.00 outstanding donations due. To finish out the year we will need this paid. He will drop notices in mailboxes of affected staff but the payment is not required.

Staffing update: Three interns from Hayward begin in the department next week. Staff are to speak with Chris if they would like to work with them. The first week here they will be sent to the hospital orientation and the second week will be given their assignments.

New hire, Marge Healey was welcomed and staff asked to lend her assistance in her adjustment. She will be working in the GeroPsy. program at Clarendon. Michele and Christine are expected to return shortly. Staff was advised to wards K7, F6 and B3 being open if any staff are interested in changing assignments.

Preliminary information from the recent State Survey shows our department did well. We are aware of citations on three items. The three are 1) the calendar not being up on the first day of the month, 2) Residents' complaint of insufficient staff to transport them to activities off the ward and 3) also a complaint from residents regarding the cancellation of YIPS programming. More detailed information will be forthcoming in the future on the survey.

The hospital funding for the restaurant bus trips is changing. The hospital will be funding completely the charges for these trips with the exception of three restaurants ie. Nick's - Pacifica, Basque Cultural Center - South SF and the Irish Cultural Center. Residents choosing to dine at these three restaurants will be required to pay for their meals.

The activity specialty bus trips will remain at one ward trip per quarter. The hospital wide bus trips will be changed to follow a standard trip from a list and the original trip created by staff. Hospital wide trips per year per staff will remain at two. Woodworking and Camera Club are considered hospital-wide bus trips. Residents will be surveyed in the future to determine _____.

Staff were asked to continue to submit names of recently admitted residents interested in attending the Baseball games and upcoming 49er Football games. This is especially pertinent to M5, O4, L4 and C2 with their continual admissions.

Special events update: Mariel asked for assistance in decorating for the June 11th Phillipine Independence Day celebration. Decorating will begin at 9:00 on day of event. Two-hundred resident names have been submitted to attend. Volunteers will be available to assist in escorting residents to Gerald Simon.

- Sharon gave an update on the Polynesian program for Saturday. Pickup will be at 12:45 with the show at 1:30. Light snacks will be served. Flyers have been sent to headnurses and nametags for pickup of residents.

- Morse Hall grand opening will be June 17th. Volunteer Inc will be recognized for purchasing the pooltable, large screen TV, jukebox and video game equipment. Social dining in the area will be promoted. Dennis Donovan will provide live music and art booths will be provided for residents participation. Staff are asked to assist with resident transport to attend and to facilitate the serving of food items.

CCSF 00053

- 4th of July parade on Friday, July 2nd will include floats from each floor. Other departments are being encouraged to contribute floats for the parade. Chris has ordered small American flags for the residents in the hallways. If staff need materials for their floats they are to see Bill. Clarendon is included in the float plan altho their floats may be on a smaller scale.

The department has outlined a time frame for the calendar process to insure calendars being posted by the morning of the first day of the month. Special Events will be set by the 2nd Wednesday of the month. The small calendar will be submitted to supervisors by the 3rd Monday of the month. Supervisors will check and approve the small calendar by the following Thursday, Friday or Saturday ie. within two working days of the supervisors work schedule. The large calendar will be posted on the ward/hallway by 9:30 am of first day of the month.

Information regarding food orders was discussed. Staff are asked to watch the amounts of food being requested for luncheons. A nurses signature is required and a copy should be given to Marilou for billing. No luncheons should be planned for the same day as a kitchen special event. They can not accommodate any orders for that day but will comply for the day before or after the event. Staff should review their food orders for evening and weekends programs.

Bill passed out copies of the revised initial assessment form (see attached) and asked staff to a give him feedback. When these forms are finally adopted the plan will be to delete the 30 day assessment form. The design of the new form reflects the information requested from the therapist on the MDS form. Guidelines for use of the form will come later upon formal hospital approval of the form.

National OT week is either the 2nd or 3rd week of July. A staff committee is needed to plan the event. Activities could be planned for staff and residents in Moran Hall. Sabnita stated she would like to construct a paper quilt with each staff member contributing a square.

Announcements:

- A volunteer who speaks Russian will be working on Thursday afternoon with the travis. Staff are asked to introduce residents to her.

- New dyes are available for the machine ie. stars, frames and birthday cakes. Dyes could be used by staff for their floats. They also could use form and add pieces.

- Psycosocial Clarendon program has increased to six residents with an additional two being admitted tomorrow. When the admission is finalized each ward will have 18 residents and the staff will meet twice a day for planning and update.

DATE June 10/99

## ACTIVITY THERAPY STAFF

Abram, Susie (D-3)

Alvarado, Cathie (CH)

Badiola, Muriel (K-6)

Bailey, Tony

Bray, Jeanine (L-7)

Brink, Harold (G-4)

Burgess, Gary (D-5)

Burns, Norman (G-3)

Cameron, Victoria (O-4)

Chan, John

Charon, Jois (M-5)

Cortez, Henry (E-3)

Croeger, Paul

Frazier, William

Funabiki, Chiyomi (Fac.)

Gibson, Charlotte

Griffin, Tracy (C-3)

Grover, Sharon (O-7)

Guggenheim, Lori (M-6)

Hanson, Christine (CH)

Hube, Wendie (G-6)

Lewis, Michele (F-6)

Lindsay, Susan (L-6)

**CCSF 00055**

January 20, 2000


To:   Paul Croeger


Regarding Performance Appraisal on pages 4 & 5 first paragraph on page # 5.

    For the July calendar, I turned it in on the beginning of my work week Tuesday, June 22, 1999, because my work schedule is from Tuesday through Saturday.   Day off Sunday and Monday.  And if this was an issue, it should have been brought to my attention no later than the following month, not during my Appraisal Performance Review.  My calendar is always up on or before the first of every month in 18 years I have been here in this department.

    Thank you.


    Susie Abram

CCSF 00056

To:    Susie Abrams
Date:  1/20/2000
From:  Paul Croeger
Topic: Response to your memo


    Departmental performance appraisal guidelines state that each new months calendars will be posted by 9:30am., on the first day, of each new month. On July 1st at 9:45am I entered your ward (D3), and the June calendar was still posted. You were in the TV room at that time, and were in the process of completing the July wall calendar. I spoke to you at that time, reminded you that you were also scheduled to attend F3 rounds, and you were already late to that meeting. You then stopped working on the calendar, and went to F3 rounds (which was appropriate at that time). The final calendar was not completed and posted until near/after 11:00am on that date. The concern here, as stated in the yearly performance review, was 1) Not following the assigned time lines for calendar submission discussed during the 6/10/99 staff meeting (a second copy of which was also given to you with a memo on 10/3/99), and 2) Not submitting your July calendar until 6/22/99; leaving you less than a week to complete same.

    The June calendar was not posted until after 12:30pm., also missing the departmentally assigned due time of 9:30am, as June 1st was a Tuesday. You initially presented your small June calendar for approval on 5/26/99 at 4:00pm. This would have left you with three working days to complete the wall calendar. On the morning of 5/27/99 I placed the calendar back in your mail box, and noted the necessary changes to be made on same, before it could be approved. I then met one on one with you on 5/27/99 to go over, adjust, and finalize/approve your June calendar. Because of the shortness of the time, I was concerned you may not get the calendar completed and posted in time, I suggested you talk to someone in the 3rd floor Pod to post your calendar for you (so it would not be late). I suggested you could ask Tracy to post it for you. You then shook your head, and stated you would not ask her. You then stated that since I was your supervisor, "why can't you ask her?". As I was walking away you stated "I don't think your hearing what I'm saying."

    Though the calendars were posted on the first day of that month, each calendar missed the departmental guidelines due time. Also, your choice to wait so close to the end of the month, did not leave you sufficient time to complete the calendar. On 10/28/99 at 11:45am I did speak to you regarding this issue of turning your small draft calendars in sooner, as you were giving me your D3 Nov. calendar, and wanted it back/approved that same afternoon. We also met one on one that same afternoon, to finalize the necessary changes, so the calendar was ready to be approved.

1/20/99 Performance Appraisal Addendum

This review was initially presented and discussed with Susie on 1/19/99, and after reading through same together, she stated she would like to have time to "digest" this information before she signed the review. This writer stated she could review the appraisal copy, which writer had given her, from this 1/19/99 meeting.

About 8:45am, on 1/20/99, writer checked in with Susie to secure a time to go over her concerns with the review. Susie smiled and initially thanked writer for the review, specifically for acknowledging/recognizing the good work she had done. When writer inquired to secure a specific time we could meet today, to address Susie's concerns, Susie replied she didn't have any concerns, just with one section. We both agreed to meet about 1:00pm.

At about 1:00pm on 1/20/99, Susie presented the enclosed memo to writer (i.e., leaving it on his desk), and agreed to meet with writer when he was free. Susie offered/agreed to wait a few minutes, as writer could not meet immediately with her at 1:00pm. The meeting began a few minutes after 1:00pm, during which writer gave Susie a copy of the reply memo (also enclosed). As writer attempted to hand this memo to Susie, she replied "I already have a copy", and did not extend her hand to receive the memo. Writer replied, "You could not already have a copy of this, since I just typed it." Susie then took a copy of the memo handed her, and writer then read through the memo. After reading the memo aloud, and Susie followed along on her copy, she stated her calendars were always posted on the 1st day of each month. She also stated that this review made it appear that her calendars were late. Writer replied that the review clearly details only June and July were late, and although the calendars were posted on the first day of each month, each was posted past the due time (as set by the department). Writer stated the concern also was the lateness of submitting her initial draft calendars.

Susie also stated she was concerned about the "development needed" section checked on the form. She stated she never "declines in other than routine situations", as detailed on the pre-printed section of the form. Writer replied that the narrative in the appraisal, clearly details her wiliness and actual work with peers and the Pod/3rd floor team, and that the pre-printed area on the form was not the specific area of concern. Writer continued that the narrative specifies the reason for the "development needed" rating (i.e., issues related to bus trip planning, and lateness of calendars). Susie stated, with her many years here, that whatever was checked in that box was the problem area. Writer then offered to "white out" the specifics in that box, and to type in "see narrative review". Susie replied writer did not need to white it out, because she wasn't signing it.

Susie stated she disagreed with the review, and stated she refused to sign it. She then crumpled her copy of writer's reply memo (into a ball shape), which writer had given her, and put it in the garbage in writer's office.

CCSF 00058

## II. Performance Factors (Required for all employees)

| | Competent/Effective | Exceeds Standards | Outstanding | Development Needed | Unacceptable |
|---|---|---|---|---|---|
| **1. ATTENDANCE AND PUNCTUALITY** | GOOD OBSERVANCE OF WORKING HOURS; ONLY ROUTINE ABSENCE FROM WORK ☐ | VERY PUNCTUAL AND DEPENDABLE [X] | EXTREMELY PUNCTUAL AND DEPENDABLE ☐ | HIGH RATE OF LATENESS AND/OR ABSENCE FROM WORK ☐ | EXCESSIVE AND PERSISTENT PATTERN OF LATENESS AND/OR ABSENCE FROM WORK ☐ |
| **2. KNOWLEDGE OF JOB** | WELL-INFORMED ON IMPORTANT PHASES OF THE JOB [X] | WELL-INFORMED ON ALL PHASES OF THE JOB ☐ | EXCEPTIONAL KNOWLEDGE AND UNDERSTANDING OF THE JOB ☐ | LACKS KNOWLEDGE OF SOME IMPORTANT PHASES OF THE JOB ☐ | INSUFFICIENT KNOWLEDGE TO PERFORM THE ESSENTIAL JOB REQUIREMENTS ☐ |
| **3. QUANTITY OF WORK PERFORMED** | QUANTITY OF WORK MEETS ESSENTIAL JOB REQUIREMENTS ☐ | QUANTITY OF WORK OFTEN EXCEEDS JOB REQUIREMENTS [X] | QUANTITY OF WORK CONSISTENTLY EXCEEDS JOB REQUIREMENTS ☐ | QUANTITY OF WORK DOES NOT MEET JOB REQUIREMENTS IN SOME AREAS ☐ | QUANTITY OF WORK FAILS TO MEET ESSENTIAL JOB REQUIREMENTS ☐ |
| **4. QUALITY OF WORK PERFORMED** | QUALITY OF WORK MEETS ESSENTIAL JOB REQUIREMENTS [X] | QUALITY OF WORK OFTEN EXCEEDS JOB REQUIREMENTS ☐ | QUALITY OF WORK CONSISTENTLY EXCEEDS JOB REQUIREMENTS ☐ | QUALITY OF WORK DOES NOT MEET JOB REQUIREMENTS IN SOME AREAS ☐ | QUALITY OF WORK FAILS TO MEET ESSENTIAL JOB REQUIREMENTS ☐ |
| **5. EFFECTIVENESS IN WORKING WITH OTHERS** | WORKS EFFECTIVELY WITH OTHERS ☐ | WORKS EFFECTIVELY WITH OTHERS UNDER DIFFICULT CIRCUMSTANCES ☐ | ACTIVELY PROMOTES GOOD RELATIONS WITH OTHERS ☐ | OCCASIONALLY HAS DIFFICULTY IN WORKING WITH OTHERS ☐ | SERIOUS INATTENTION TO NEEDS OF OTHERS AND/OR CONTINUED CONFLICT WITH OTHERS ☐ |
| **6. ADAPTABILITY TO WORK SITUATION** | EFFECTIVELY ADAPTS TO DAY-TO-DAY DEMANDS OF THE JOB ☐ | PERFORMS WELL EVEN UNDER PRESSURE OR IN DIFFICULT SITUATIONS ☐ | PERFORMS EFFECTIVELY IN CRISIS SITUATIONS ☐ | PERFORMANCE CONSISTENTLY DECLINES IN OTHER THAN ROUTINE SITUATIONS [X] | DOES NOT ADAPT TO ROUTINE DEMANDS OF THE JOB ☐ |
| **7. USE OF MATERIALS AND EQUIPMENT** | ROUTINELY CONSERVES MATERIALS AND/OR MAINTAINS EQUIPMENT [X] | OBTAINS MAXIMUM UTILIZATION OF MATERIALS AND EQUIPMENT ☐ | DEVELOPS IMPROVED TECHNIQUES FOR THE USE OF MATERIALS AND/OR EQUIPMENT ☐ | OCCASIONALLY WASTEFUL AND/OR CARELESS ☐ | UNACCEPTABLY WASTEFUL AND/OR CARELESS ☐ |
| **8. SAFETY** | ROUTINELY OBSERVES ALL SAFETY PRACTICES [X] | IDENTIFIES AND REPORTS SAFETY HAZARDS ☐ | CONSISTENTLY IDENTIFIES SAFETY HAZARDS AND INITIATES CORRECTIVE ACTION ☐ | OCCASIONALLY DISREGARDS SAFETY PRACTICES ☐ | SERIOUSLY DISREGARDS SAFETY PRACTICES ☐ |

## III. Managerial Factors (Required for all supervisory personnel)

| | Competent/Effective | Exceeds Standards | Outstanding | Development Needed | Unacceptable |
|---|---|---|---|---|---|
| **1. COMMUNICATING** | USUALLY COMMUNICATES CLEARLY AND PRODUCES EFFECTIVE LEVEL OF UNDERSTANDING ☐ | FREQUENTLY USES LANGUAGE SKILLS TO PROMOTE OPTIMAL LEVEL OF CLARITY AND UNDERSTANDING ☐ | CONSISTENTLY USES LANGUAGE SKILLS TO MANAGE INTERPERSONAL PROBLEMS EFFECTIVELY ☐ | SOMETIMES FAILS TO COMMUNICATE CLEARLY RESULTING IN MISUNDERSTANDING AND/OR CONFUSION ☐ | SERIOUS AND/OR PERSISTENT PROBLEMS USING LANGUAGE SKILLS ☐ |
| **2. PLANNING** | DEVELOPS NECESSARY GOALS AND PLANS AND EVALUATES RESULTS ☐ | IDENTIFIES POTENTIAL PROBLEMS AND DEVELOPS CONTINGENCY PLANS ☐ | PLANS CREATIVELY TO OPTIMIZE USE OF ALL RESOURCES ☐ | POOR ATTENTION TO PLANNING AND/OR INEFFICIENT USE OF RESOURCES ☐ | SERIOUS INATTENTION TO PLANNING AND/OR EXTREMELY WEAK IN UTILIZING RESOURCES ☐ |
| **3. DECISION MAKING** | USUALLY DEMONSTRATES SOUND EVALUATION OF FACTORS IN ROUTINE MATTERS ☐ | DEMONSTRATES EXCEPTIONAL ABILITY TO SOLVE DIFFICULT PROBLEMS ☐ | CONSISTENTLY DEMONSTRATES ABILITY TO SOLVE PROBLEMS OF A HIGHLY COMPLEX NATURE ☐ | SOMETIMES OVERLOOKS AND/OR MISJUDGES BASIC FACTORS IN ROUTINE MATTERS ☐ | SERIOUS INATTENTION TO DECISION MAKING. DECISIONS PRODUCE POOR RESULTS ☐ |
| **4. DIRECTING AND MOTIVATING EMPLOYEES** | EFFECTIVELY DIRECTS THE WORK OF EMPLOYEES ☐ | MOTIVATES EMPLOYEES TO ACHIEVE HIGH PERFORMANCE ☐ | IDENTIFIES EMPLOYEE POTENTIAL AND PROVIDES OPPORTUNITIES FOR OPTIMAL PERFORMANCE ☐ | HAS DIFFICULTY IN DIRECTING AND/OR MOTIVATING EMPLOYEES ☐ | SERIOUS INATTENTION TO DIRECTING AND/OR MOTIVATING EMPLOYEES ☐ |
| **5. TRAINING AND DEVELOPING EMPLOYEES** | MAKES PROVISIONS FOR EMPLOYEES TO ACQUIRE NECESSARY JOB SKILLS AND KNOWLEDGE ☐ | ENCOURAGES EMPLOYEES IN CAREER DEVELOPMENT ☐ | ACTIVELY PROVIDES EMPLOYEE TRAINING AND DEVELOPMENT OPPORTUNITIES ☐ | SOMETIMES FAILS TO PROVIDE NEEDED TRAINING OR JOB INFORMATION TO EMPLOYEES ☐ | SERIOUS INATTENTION TO EMPLOYEE TRAINING NEEDS ☐ |

## IV. Overall Evaluation

| Competent and Effective | Exceeds Standards | Outstanding | Development Needed | Unacceptable |
|---|---|---|---|---|
| [XX] | ☐ | ☐ | ☐ | ☐ |

CCSF 00059

# V. Comments  *Must be completed according to instructions.*

**A.** Facts/Specific Performance Documentation: *Adequate and accurate documentation is required.*
(Attach additional pages as necessary)

(See Attached)

**B.** Employee Strengths:

(See attached)

**C.** Work Plan for Next Report Period:

**CCSF 00060**

1) Maintain current level of Attendance and Quantity of Work Performed (i.e., Exceeds Standards).
2) Improve timeliness of completion of small calendar, according to departmental guidelines, and to post monthly wall calendar in a timely manner 100% of time.
3) To improve communication with agencies involved, confirming arrival times and costs, and securing needed supplies prior to actual date of bus trip implementation.

**D.** Recommendations:

Continue in Class 2587 Health Worker III

## VI. Reporting Manager

| 1 NAME WORK ADDRESS | 2 CLASS No AND TITLE | 4 CONFERENCE REPORT WITH (Manager's Signature) |
|---|---|---|
| Paul Croeger<br>Laguna Honda Hospital<br>375 Laguna Honda Blvd., SF, CA 94116 | 2588 Health Worker IV | |
| | 3 DATE OF REPORT<br>*1-19-2000* | 5 SIGNATURE<br>*Paul E Croeger* |

## VII. Employee's Statement  *(See Handbook for Statement of Employee Rights)*

*Refused to sign*

| | 2 DATE OF COUNSELING INTERVIEW |
|---|---|
| ☐ I agree with this report.    ☐ I do not agree with this report. Sect. ____ No.____ | |
| ☐ I request a conference with the Reviewer. | 3 SIGNATURE CERTIFIES I HAVE READ REPORT |
| ☐ Rebuttal attached. | |

## VIII. Reviewer's Certification

| 1 NAME WORK ADDRESS | 2 CLASS No AND TITLE | 4 DATE OF CONFERENCE INITIALS OF THOSE PRESENT |
|---|---|---|
| William G. Frazier<br>Laguna Honda Hospital<br>375 Laguna Honda Blvd., SF, CA 94116 | 2557 Director of Activity Therapy | |
| | 2 DATE OF REVIEW<br>*1/20/00* | |
| ☑ I certify that I have reviewed this report.<br>☐ I have taken the following action: | *William G. Fry* | 6 SIGNATURE<br>*William G. Fry* |

City
and
County
of
San Francisco

# Performance Appraisal Report

RECEIVED
01 MAY -9 AM 8: 32

HUMAN RESOURCES
CITY & COUNTY OF S.F.
LAGUNA HONDA HOSPITAL

## Identification

Name: Susie Abram
Class/Title: 2587 Health Worker III
Status: PCS Reason for Report: Annual
1st. Date in Class: 4/5/82 Probation Ends:
From: 12/31/99 To: 12/30/2000  Date Mailed: 12/7/2000
PC Info:  2588-0026-00     Reports to: William Frazier
                2557-0001-00



| FILE | | 3 STATUS | |
|---|---|---|---|
| | 6 REASON FOR REPORT | 7 1ST DATE IN CLASS | |
| ART | | | |
| | TO | 9 PROBATION ENDS | |
| A. 1986) | | | |

CCSF 00037

Susie Abram – Health Worker III, Class 2587
Performance Appraisal Period 12/31/99 to 12/30/2000

**ATTENDANCE & PUNCTUALITY**: In the area of attendance, Susie needs development. She has had 14 sick days (i.e, 1/6/00 - 1/7/00, *1/18/00, 2/10/00, *3/11/00, 3/15/00 – 3/16/00, *4/15/00, 4/25/00, *6/27/00, 7/21/00, 8/8/00, 8/11/00, 10/26/00, 11/3/00, *11/25/00); *5 of which occurred after or before a weekend. Susie has had 3 days which she has gone home sick 1/15/00, 7/8/00, and 12/30/00 (all of which have been on Saturdays, the last day of the week that she works). On 3/29/00, Bill Frazier, the director of the Activity Therapy Department, spoke to her concerning her leaving the department before 5:00pm but signing out at 5:00pm. Since this conversation others have noted and expressed concern about her leaving before 5:00pm. Susie has exceeded standards in the area of punctuality.

**KNOWLEDGE OF JOB**: Competent and Effective Standards have been met. Susie's monthly activity calendar contains all of title 22 requirements pertaining to the scope of activities. Susie shows respect for the residents on her unit by treating them with dignity. She has a rapport with the residents that shows through interaction during activities and at other times. Susie follows Departmental and Hospital policy and procedures. She attends all Departmental and Hospital inservices. Susie attends unit based IDT meetings and specialized inservices pertaining to her specialized ward.

**QUANITITY OF WORK PERFORMED**: Competent and Effective Standards have been met in this area. Susie continues to be the primary Activity Therapist on D3. She participates in all staff meetings. She participates in Title 22 and Department inservice. She also attends and participates in meetings for preparation of late night, holiday, and special events.

During this yearly interval she completed all assigned bus trips: 3/8/00, 5/12/00, 7/7/00, 9/1/00, and 11/22/00. Susie also was the lead on planning and implementing the Black History Month Show, which was a hospital wide event on 2/25/00. The show in normally 1½ hours long and has resident involvement. She works on Saturday's during the day and on Tuesday evenings. Susie also readily accepts children on to her ward as part of the intergenerational program. She always gives a helping hand to others with their program when needed such as during the Christmas show. Putting the focus on the residents, not on whose responsibility it is to do the activity. The department is undertaking efforts to increase contact time and activities for residents. Susie may need to enhance her time management skills in order to avoid being overwhelmed.

**QUALITY OF WORK PERFORMED**: Development is needed in this area. During the year, Susie has had 7 chart reviews. Each of the charts reviewed showed signs of development being needed in the area if quality of work. Out of the 7 charts reviewed, 2 had incomplete care plans, 1 had a late transfer note. In 2 of the charts reviewed, activities were triggered but there was no RAP note. 1 did not have an Activity Therapy Assessment. In 3 of the charts, the MDS' were not signed by the Activity Therapist. In 2 of the charts the quarterly note did not review the care plan.

In November, Susie expressed to me that Bill Frazier, the Director of Activity Therapy, had performed a mock survey on D3 and expressed that he had found some paper work missing. I asked Susie if she wanted me to go through all of her paper work and tell her what was missing. She said, "yes". Over a 2 –3 week period of time I reviewed all of the charts on unit D3. I discovered 20 charts that were incomplete. The problems consisted of MDS not being signed, RAP notes not being done, care plans that needed to be updated, care plans not being measurable, and cases where there weren't any care plan at all.

| January | February | March | April |
|---------|----------|-------|-------|
| 9 – 1 = 89% | 8 - 0= 100% | 15 – 2 = 87% | 6 –1 = 83% |

| May | June | July | August |
|-----|------|------|--------|
| 5 – 1 = 80% | 15 – 0 = 100% | 11 – 0 = 100% | 6 – 1 = 83% |

| September | October | November | December |
|-----------|---------|----------|----------|
| 13 – 4 = 69% | 12 – 2 =83% | 7 – 0 =100% | 14 –1 = 93% |

Totals:    121 – 13 = 89% (overall)

Susie has recently expressed concerns regarding her paper work. I have also had a meeting with the Nurse Manager of the unit concerning AT's paper work. A meeting has been set up for the Activity Therapist, Nursing manager, and myself to discuss the concerns of the unit and develop solutions.

Susie has followed timelines regarding getting calendars, food service request, and bus trip request. Susie has had problems on her unit regarding her Attendance book. On a few occasions she has complained that someone has removed attendance sheets from the Attendance book. She has spoken to the Nurse Manager and myself regarding her concerns. The Nurse Manager said that she would keep an eye open for anyone going into the binder.

CCSF 00039

**EFFECTIVENESS IN WORKING WITH OTHERS**: Competent and Effective Standards have been met. Susie puts her best foot forward when working with others. She plans meeting ahead of time to coordinate the details of the activity. She is also able to adjust to changes in residents' moods. She speaks to residents in a calm manner. She reads their body language to determine how she should best address them. She can be found laughing with them as well as instructing them in an activity. Susie communicates with the IDT and with the Nurse manager on D3. She tell them what the residents' needs are and shares her observations of the resident's interacting with one another as well as personal interaction with the residents. When needed she will ask the writer or others to assist her in dealing with problems.

**ADAPTABILITY TO WORK SITUATION**: Competent and Effective Standards have been met. Susie is able to rearrange her schedule so that the residents can benefit from last minute programming such as unexpected groups coming in. She has adapted her programming to include children when she has an opportunity to have a youth group visit. However, Susie is encouraged to be open to new procedures related to program development. Susie has demonstrated a tendency to discount new ideas before they are tried. With the continual development of the Psycho-Social cluster; adaptability and being prepared to lean new approaches will be important.

**USE OF MATERIALS AND EQUIPMENT**: Competent and Effective Standards have been met. Susie follows the department policy regarding equipment return and care. She returns items in a timely manner and cares for them while they are in her possession. She has followed the Christmas decoration procedure for pick up and delivery.

**SAFETY**: Competent and Effective Standards have been met. Susie follows Departmental and Laguna Honda procedures concerning safety. She is mindful not to push more then one wheelchair at a time and locks the wheel chair when she stops. She has attended all of the Hospital wide inservices concerning safety such as Hazardous Materials and Infection Control.

**EMPLOYEE STRENGTHS**: Susie interacts with residents in a respectful caring manner. She expresses a willingness to develop her skills and is open to feedback concerning her current level.

**WORK PLAN FOR NEXT REPORT PERIOD:**
1) Improve quality of work by increasing percentage of documentation on time to at least 90%
2) Improve quality of work by signing MDS' at least 90% of the time.

CCSF 00040

3) Improve quality of work by writing RAP notes at least 90% of the time when needed.

4) Improving quality of work by writing complete care plans that are specific and measurable at least 90% of the time.

5) Improve in the area of attendance by having no more than 12 sick days in the next year review (2001).

**RECOMMENDATION:** Continue in Class 2587 Health Worker III

## II. Performance Factors (Required for all employees)

| Competent/Effective | Exceeds Standards | Outstanding | Development Needed | Unacceptable |
|---|---|---|---|---|
| **1. ATTENDANCE AND PUNCTUALITY** | | | | |
| GOOD OBSERVANCE OF WORKING HOURS; ONLY ROUTINE ABSENCE FROM WORK | VERY PUNCTUAL AND DEPENDABLE | EXTREMELY PUNCTUAL AND DEPENDABLE | HIGH RATE OF LATENESS AND/OR ABSENCE FROM WORK [X] | EXCESSIVE AND PERSISTENT PATTERN OF LATENESS AND/OR ABSENCE FROM WORK |
| **2. KNOWLEDGE OF JOB** | | | | |
| WELL-INFORMED ON IMPORTANT PHASES OF THE JOB | WELL-INFORMED ON ALL PHASES OF THE JOB [X] | EXCEPTIONAL KNOWLEDGE AND UNDERSTANDING OF THE JOB | LACKS KNOWLEDGE OF SOME IMPORTANT PHASES OF THE JOB | INSUFFICIENT KNOWLEDGE TO PERFORM THE ESSENTIAL JOB REQUIREMENTS |
| **3. QUANTITY OF WORK PERFORMED** | | | | |
| QUANTITY OF WORK MEETS ESSENTIAL JOB REQUIREMENTS | QUANTITY OF WORK OFTEN EXCEEDS JOB REQUIREMENTS [X] | QUANTITY OF WORK CONSISTENTLY EXCEEDS JOB REQUIREMENTS | QUANTITY OF WORK DOES NOT MEET JOB REQUIREMENTS IN SOME AREAS | QUANTITY OF WORK FAILS TO MEET ESSENTIAL JOB REQUIREMENTS |
| **4. QUALITY OF WORK PERFORMED** | | | | |
| QUALITY OF WORK MEETS ESSENTIAL JOB REQUIREMENTS | QUALITY OF WORK OFTEN EXCEEDS JOB REQUIREMENTS | QUALITY OF WORK CONSISTENTLY EXCEEDS JOB REQUIREMENTS | QUALITY OF WORK DOES NOT MEET JOB REQUIREMENTS IN SOME AREAS [X] | QUALITY OF WORK FAILS TO MEET ESSENTIAL JOB REQUIREMENTS |
| **5. EFFECTIVENESS IN WORKING WITH OTHERS** | | | | |
| WORKS EFFECTIVELY WITH OTHERS | WORKS EFFECTIVELY WITH OTHERS UNDER DIFFICULT CIRCUMSTANCES [X] | ACTIVELY PROMOTES GOOD RELATIONS WITH OTHERS | OCCASIONALLY HAS DIFFICULTY IN WORKING WITH OTHERS | SERIOUS INATTENTION TO NEEDS OF OTHERS AND/OR CONTINUED CONFLICT WITH OTHERS |
| **6. ADAPTABILITY TO WORK SITUATION** | | | | |
| EFFECTIVELY ADAPTS TO DAY-TO-DAY DEMANDS OF THE JOB [X] | PERFORMS WELL EVEN UNDER PRESSURE OR IN DIFFICULT SITUATIONS | PERFORMS EFFECTIVELY IN CRISIS SITUATIONS | PERFORMANCE CONSISTENTLY DECLINES IN OTHER THAN ROUTINE SITUATIONS | DOES NOT ADAPT TO ROUTINE DEMANDS OF THE JOB |
| **7. USE OF MATERIALS AND EQUIPMENT** | | | | |
| ROUTINELY CONSERVES MATERIALS AND/OR MAINTAINS EQUIPMENT [X] | OBTAINS MAXIMUM UTILIZATION OF MATERIALS AND/OR EQUIPMENT | DEVELOPS IMPROVED TECHNIQUES FOR THE USE OF MATERIALS AND/OR EQUIPMENT | OCCASIONALLY WASTEFUL AND/OR CARELESS | UNACCEPTABLY WASTEFUL AND/OR CARELESS |
| **8. SAFETY** | | | | |
| ROUTINELY OBSERVES ALL SAFETY PRACTICES [X] | IDENTIFIES AND REPORTS SAFETY HAZARDS | CONSISTENTLY IDENTIFIES SAFETY HAZARDS AND INITIATES CORRECTIVE ACTION | OCCASIONALLY DISREGARDS SAFETY PRACTICES | SERIOUSLY DISREGARDS SAFETY PRACTICES |

## III. Managerial Factors (Required for all supervisory personnel)

| Competent/Effective | Exceeds Standards | Outstanding | Development Needed | Unacceptable |
|---|---|---|---|---|
| **1. COMMUNICATING** | | | | |
| USUALLY COMMUNICATES CLEARLY AND PRODUCES EFFECTIVE LEVEL OF UNDERSTANDING | FREQUENTLY USES LANGUAGE SKILLS TO PROMOTE OPTIMAL LEVEL OF CLARITY AND UNDERSTANDING | CONSISTENTLY USES LANGUAGE SKILLS TO MANAGE INTERPERSONAL PROBLEMS EFFECTIVELY | SOMETIMES FAILS TO COMMUNICATE CLEARLY RESULTING IN MISUNDERSTANDING AND/OR CONFUSION | SERIOUS AND/OR PERSISTENT PROBLEMS USING LANGUAGE SKILLS |
| **2. PLANNING** | | | | |
| DEVELOPS NECESSARY GOALS AND PLANS AND EVALUATES RESULTS | IDENTIFIES POTENTIAL PROBLEMS AND DEVELOPS CONTINGENCY PLANS | PLANS CREATIVELY TO OPTIMIZE USE OF ALL RESOURCES | POOR ATTENTION TO PLANNING AND/OR INEFFICIENT USE OF RESOURCES | SERIOUS INATTENTION TO PLANNING AND/OR EXTREMELY WEAK IN UTILIZING RESOURCES |
| **3. DECISION MAKING** | | | | |
| USUALLY DEMONSTRATES SOUND EVALUATION OF FACTORS IN ROUTINE MATTERS | DEMONSTRATES EXCEPTIONAL ABILITY TO SOLVE DIFFICULT PROBLEMS | CONSISTENTLY DEMONSTRATES ABILITY TO SOLVE PROBLEMS OF A HIGHLY COMPLEX NATURE | SOMETIMES OVERLOOKS AND/OR MISJUDGES BASIC FACTORS IN ROUTINE MATTERS | SERIOUS INATTENTION TO DECISION MAKING; DECISIONS PRODUCE POOR RESULTS. |
| **4. DIRECTING AND MOTIVATING EMPLOYEES** | | | | |
| EFFECTIVELY DIRECTS THE WORK OF EMPLOYEES | MOTIVATES EMPLOYEES TO ACHIEVE HIGH PERFORMANCE | IDENTIFIES EMPLOYEE POTENTIAL AND PROVIDES OPPORTUNITIES FOR OPTIMAL PERFORMANCE | HAS DIFFICULTY IN DIRECTING AND/OR MOTIVATING EMPLOYEES | SERIOUS INATTENTION TO DIRECTING AND/OR MOTIVATING EMPLOYEES |
| **5. TRAINING AND DEVELOPING EMPLOYEES** | | | | |
| MAKES PROVISIONS FOR EMPLOYEES TO ACQUIRE NECESSARY JOB SKILLS TO KNOWLEDGE | ENCOURAGES EMPLOYEES IN CAREER DEVELOPMENT | ACTIVELY PROVIDES EMPLOYEE TRAINING AND DEVELOPMENT OPPORTUNITIES | SOMETIMES FAILS TO PROVIDE NEEDED TRAINING OR JOB INFORMATION TO EMPLOYEES | SERIOUS INATTENTION TO EMPLOYEE TRAINING NEEDS |

# IV. Overall Evaluation

| Competent and Effective | Exceeds Standards | Outstanding | Development Needed | Unacceptable |
|---|---|---|---|---|
| [X] | | | | |

CCSF 00042

## V. Comments  *Must be completed according to instructions.*

**A.** Facts/Specific Performance Documentation:  *Adequate and accurate documentation is required.*
    (Attach additional pages as necessary)

(See Attached)

**B.** Employee Strengths:
    (See Attached)

**C.** Work Plan for Next Report Period:
    (See Attached)

**D.** Recommendations:
    Continue in Class 2587 Health Worker III

**CCSF 00043**

## VI. Reporting Manager

| 1. NAME, WORK ADDRESS | 2. CLASS No AND TITLE | 4. CONFERENCE REPORT WITH (Manager's Signature) |
|---|---|---|
| Lisa Randon<br>Laguna Honda Hospital<br>375 Laguna Honda Blve., SF, CA 94116 | 2588 Health Worker IV<br><br>2. DATE OF REPORT  3/24/01 | 5. SIGNATURE  *Lisa Randon* |

## VII. Employee's Statement  *(See Handbook for Statement of Employee Rights)*

| 1. | ☐ I agree with this report.  ☒ I do not agree with this report. Sect. 2  No. 1,26 | 2. DATE OF COUNSELING INTERVIEW |
|---|---|---|
| | ☒ I request a conference with the Reviewer.  EMPLOYE GIVEN TIME<br>☒ Rebuttal attached.  TO PEPARE REBUTAL, BUT FAILED TO DO SO. | 3. SIGNATURE CERTIFIES I HAVE READ REPORT<br>ENPLOYE REFUSED TO SIGN (WGF) |

## VIII. Reviewer's Certification

| 1. NAME, WORK ADDRESS | 2. CLASS No. AND TITLE | 4. DATE OF CONFERENCE  INITIALS OF THOSE PRESENT |
|---|---|---|
| William Frazier<br>Laguna Honda Hospital<br>375 Laguna Hinda Hospital Blvd., CA | 2557 Director of Activity<br><br>3. DATE OF REVIEW  5/8/01 | |
| 5. ☐ I certify that I have reviewed this report.<br>☒ I have taken the following action: | MET WITH EMPLOYEE AND ADVISED<br>HER OF HER OPTIONS TO DISPUTE REPORT.<br>EMPLOYEE FAILED TO EXERCISE OPTIONS | 6. SIGNATURE  *William J. Fray* |

June 19, 01

## Performance Appraisal Rebuttal

(1)    Attendance and Punctuality:
       I had a death in the family.  I was not off that May for 14 days. (No verbal or written warning.)

(2)    I left between three to five minutes at one time and at no other time.  There was no written warning.

(2)    Who are the others (names) that expressed concern about me leaving before five? That is not true.

(2)    I have been here for 19 years, and have never been late.

(3)    I am always open to ideas.  Who gave the impression that I was not open to ideas?

(4)    I feel this is harassment and a negative appraisal.

(5)    I also feel like I am being set up.

(6)    There is nothing about Black History.  (For 7 years.)

There was no verbal consultation regarding any work performance prior to written evaluation.

:jcb

opeiu29aflcio      Thank you

Susie Allen

This is Susie's
Rebuttal to her performance
appraisal that was
Completed in March
2001.
Performance period
12/3/99 to 12/30/2000
Please file Thanks Lisa Rawston

RECEIVED
01 SEP 11 AM 11:10
HUMAN RESOURCE SERVICES
DEPT OF PUBLIC HEALTH-SF
LAGUNA HONDA HOSPITAL

CCSF 00044

# City
# and
# County
# of
# San Francisco



RECEIVED

02 AUG 13 PM 1:53

# Performance Appraisal Report

## Identification

| 1. LAST NAME, FIRST NAME, MIOOLE INITIAL | 2. CLASS No. ANO TITLE | | 3. STATUS |
|---|---|---|---|
| Abram, Susie | 2587 Health Worker III | | PCS |
| 4. WORK LOCATION & OIVISION<br>Laguna Honda Hospital<br>375 Laguna Honda Blvd. | 5. OEPARTMENT<br><br>Activities | 6. REASON FOR REPORT<br><br>Annual | 7. 1ST OATE IN CLASS<br><br>4/5/82 |
| | 8. PERIOO OF REPORT<br>1/1/01 to 3/31/02 | | 9. PROBATION ENDS |

CITY AND COUNTY OF SAN FRANCISCO/PERFORMANCE APPRAISAL REPORT/CSC 8-05, (REV January 1996)





CCSF 00024

# JOB DESCRIPTION

**Working Title:**

### 2587 Health Worker III, Activity Therapist

## Position Summary:

The Health Worker III – Activity Therapist works to enhance the quality of life and functional abilities for the residents of Laguna Honda Hospital. Each Activity Therapist participates on interdisciplinary teams who collaboratively design a plan of care to meet the physical, intellectual, psychosocial, and spiritual needs of each resident. The Activity Therapist provides interventions and facilitates positive leisure opportunities to individual residents, small groups, and the entire hospital population.

## Reporting Relationships:

- Reports directly to the Activity Therapy Supervisor and the Director of Therapeutic Activities
- Evaluated by the Activity Therapy Supervisor
- Collaborates with physicians, nurses, and other healthcare providers.

## Major Responsibilities:

- Performs comprehensive assessments to determine the individual needs of assigned residents.
- Participates in the interdisciplinary approach to resident care planning.
- Performs appropriate documentation related to the care of assigned residents.
- Plans, implements, and evaluates individual and groups activities for residents in accordance with Title 22 and OBRA guidelines.
- Collaborates with other disciplines and hospital departments to provide assigned residents with the necessary opportunities and resources to achieve leisure related goals with the highest degree of independence possible.
- Plans and implements resident bus trips and outings into the community.
- Collaborates with fellow Activity Therapy staff members in the implementation of floor-based activities
- Prepares and maintains activities calendar on assigned ward(s).
- Contributes to the social dining experience on assigned unit(s).
- Plans and implements hospital-wide programs and special events.
- Supervises and directs volunteers and student interns as assigned.
- Effectively manages equipment, supplies, and other program resources
- Participates in department based and hospital-wide training programs.
- Attends and participates in department staff meetings.
- Contributes to the enhancement of department operations
- Communicates effectively with residents, family members, visitors, and staff
- Adheres to all department and hospital policies and procedures.
- Completes tasks as assigned by the Activity Therapy Supervisor and the Director of Therapeutic Activities
- Performs all tasks and responsibilities with a high level of productivity.

JOB TITLE: Health Worker III

## Employee Name: Susie Abram

Rating Period: From 1/01/2001 To _____

| I | II |
| --- | --- |
| **Performance Criteria** | **Rating and Comments** |
| **Performance Elements and Standards**<br>*Relate to Major Responsibilities outlined in the Job Description.)* | **Rating/Comments on Actual Performance**<br>Select a rating number and comment on all sections.<br><br>1-Unacceptable  3-Competent and Effective  5-Outstanding<br>2-Development Needed  4-Exceeds Standards |
| **1.** **ASSESSMENT**<br>a.  Utilizes appropriate assessment technique<br>  • Interview of resident.<br>  • Observation.<br>  • Review of the medical record<br>  • Collaboration with family, friends, and interdisciplinary team members.<br>Appropriately utilizes RAI to identify resident needs.<br>Demonstrates awareness of resident status and ability to modify care plan | **3** **Rating/Comments**<br><br>Susie is competent and effective in this area.  She utilizes appropriate assessment technique by interviewing, observing resident's behavior, reviewing medical records and collaborating with members of the IDT, including the resident's family member. |
| **2.** **DOCUMENTATION**<br>a.  Completes initial and annual Activity Therapy Assessment forms completely and within established timelines.<br>b.  Accurately codes required MDS entries and within established timelines.<br>c.  Effectively Completes RAP notes.<br>  • Timely | **3** **Rating/Comments**<br><br>Susie has an overall on time completion rate of 96%, despite having a shared unit between September 2001 and January 2002. This is an improvement over her last performance appraisal were her rating was 89%.  This rating consist of 14 months, 4 of which she not only covered her unit but shared a second unit.  Susie has work diligently with the MDS coordinator for her unit to improve her documentation skills. |

CCSF 00026

| Performance Criteria | I | II Rating and Comments |
|---|---|---|
| • Follows format<br>d. Effectively documents plan of care including<br>  Behavior specific problem statements.<br>  Measurable goals, individualized for the resident.<br>  Specific, measurable interventions that include<br>  activities of resident preference.<br>  Appropriately links on to other care plan problems,<br>  goals, and interventions.<br>e. Completes quarterly notes as appropriate.<br>  • Review of resident progress in relation to current plan<br>  of care.<br>  • Resident involvement in activities and reaction to plan<br>  of care.<br>  • General focus of future Activity Therapy interventions.<br>f. Completes transfer notes<br>  • Review of current plan of care<br>  • General focus of future Activity Therapy interventions<br>  Maintains resident participation records.<br>  • Maintains daily participation records for assigned<br>  residents.<br>  • Informs staff of resident participation in hospital-wide<br>  programs and special events.<br>  • Ensures the transfer of participation records of to<br>  appropriate ward upon resident relocation | | She has made a number of improvements such as creating more resident centered care plans, that links with problems other then activities. At times, this has been a straggle because of the viewpoints of others on her unit. She is creating care plans that are more specific to residents needs and that are measurable. Her quarterly notes are completed in a timely manner and follow proper format by monitoring rather or not the resident has reached goal and if it has been reached timely manner. She maintains resident's participation records, keeping track of activities that the resident has attended and ensuring that the activity related documentation transfers when the resident transfers. Susie is missing a MDS sheet for the month of September 2001, which is when she was on vacation. |

3.
PLANNING

a. Attends and participates in resident care conferences.
b. Prepares and maintains monthly calendars for assigned
   ward(s).
   • Calendars satisfy department and Title 22
     requirements.
   • Calendars are prepared, approved, and distributed in
     a timely fashion.
   • Calendars are legible with good presentation
   • Changes to the calendar are reported to appropriate
     staff and documented.
c. Participates in the planning of floor based activities
d. Plans bus trips and community outings
   • Appropriately utilizes Bus Trip Planning form
   • Makes timely and appropriate food orders
   • Secures volunteers
   • Consults with IDT regarding concerns related to
     outings.
e. Participates in the planning and implementations of
   hospital-wide programs
f. Participates in the planning of special events

4.
IMPLEMENTATION

   • Implements ward-based activities.
     • Activities are stimulating
     • Activities are congruent with the resident interests
     • Activities contribute to resident functional status
     • Demonstrates the ability to adapt activities to meet the
       needs of residents.
b. Participates in the implementation of floor-based
   programs and activities
c. Participates in the implementation hospital-wide
   programs.
d. Satisfies department requirement for involvement in
   special event implementation.
e. Satisfies department requirement for implementation of
   bus trips and community outings.

3    Rating/Comments

Susie attends and participates in resident's care conferences
for her unit. She also attends pro-social meeting geared
toward her unit's special population. Susie prepares and
maintains a monthly calendar for her assigned unit. The
calendar follows Title 22 regulations. Susie's calendar is not
very legible, at times it is very difficult to read. Susie
participates in the planning of floor based activities. She plans
and participates in community outings, making sure that food
orders are put in a timely manner (there was one incident were
a food order was not completed for a bus trip), she insures that
she has volunteers, and that someone at the destination is
aware of their arrival. She has provided the residents on her
unit with the required amount of bus trip set forth by the
department. Susie's hospital wide event for 2002 is
helped with the implementation of other hospital wide
Independence Day, which has not occurred yet. Susie has
programs such as Kwanzaa, Cinco de Mayo, and the
Christmas Show.

3    Rating/Comments

Susie implements both unit based and floor wide activities.
The activities are congruent with resident's interest and are
stimulating. She does demonstrate ability to adapt activities to
meet the needs of the residents. Susie was instrumental in the
planning and implementing of the Black History Show in 2001.
She planned, coordinated, and carried out more then an hour-
long show which included staff, resident, and outside
professional talent. She has coordinated this event for many
years. It was noted by the supervisor for the event that she did
not communicate very well with him during the planning of the
event, therefor there were a few incidents that could have been
avoided. Susie has completed the required amount of bus
trips and community outing set forth by the department.

**5.**
**SUPERVISION**
Provides appropriate supervision and encouragement to volunteers and student interns.

☐3 **Rating/Comments**

Susie provides appropriate supervision and encouragement to her volunteers; this is evident by the long-standing relationships she has with them. She has had volunteers that have worked with her on a program for over a year.

**6.**
**STAFF DEVELOPMENT**
a. Maintains and upgrades own knowledge, skills, and abilities by participating in:
- Mandatory hospital training sessions.
- Department inservice training program.
- Department staff meetings.
- Reviewing and providing appropriate input on policies and procedures.

☐3 **Rating/Comments**

Susie attends all mandatory hospital, department, and unit based inservices.

7.
COMMUNICATION - COLLABORATION - COLLEGIALITY
a. Communicates effectively with others by:

- Communicating in a constructive, non-judgmental manner.
- Listening attentively and showing empathy.
- Managing conflict by addressing issues in a manner that maintains good working relationships.
- Communicates concerns to colleagues and supervisors promptly

b. Contributes to the professional development of others by:

- Sharing knowledge and skills.
- Providing and accepting constructive feedback.
- Establishing collaborative practice with IDT members and other healthcare professionals.

**3** Rating/Comments

Susie has made improvement in the area of communication. During this reporting period, she has extended herself to her colleagues to further develop their relationships. Susie has collaborated with the Activity Therapist on her floor in planning activities for the residents on the floor. Susie communicates her concerns to her colleagues and supervisor in a timely manner. She has also improved in the area of accepting criticism, but still needs to be mindful in this area.

8.
PATIENT, VISITOR, AND STAFF RELATIONS & ETHICS
a. Maintains and promotes a "customer service" philosophy by:

- Demonstrating good interpersonal skills.
- Maintaining professional appearance and clean work space.
- Cooperating with all levels of staff throughout the organization.
- Demonstrating flexibility in adapting to changes to meet organizational mission and goals.
- Respecting patient and employee rights.
- Managing problems and concerns.
- Communicating in a courteous and helpful manner.

b. Supports autonomy, dignity, and rights of residents and others by:

- Preserving resident privacy and maintaining confidentiality of information.

**3** Rating/Comments

For the most part Susie demonstrates good interpersonal skills. She maintains a professional appearance, but has a significant amount of clutter in her cubicle. She cooperates with all levels of staff throughout the organization. If she disagrees with someone she will either voice her opinion and then complete the task or she will mumble under her voice and then complete the task. Susie has made improvements in the area of being flexible. Her motto seems to be "what ever is best for the residents". Susie respects the autonomy, dignity, and rights of the residents by preserving their rights to privacy and dealing with all residents in a non-judgmental manner.

CCSF 00030

- Performing tasks in a non-judgmental, non-discriminatory manner that is sensitive to individual needs, cultural diversity, sexual orientation and personal limitations.

9.
USE OF EQUIPMENT
a   Appropriately reserves equipment and supplies.
b   Utilizes checkout procedures for equipment.
c   Returns equipment in a timely fashion.
d   Returns equipment clean and in good condition.
e   Reports the needs for repair or replacement of equipment.

**Rating/Comments** ☐ 3
Susie uses equipment in an appropriate manner, returns them in good working condition, and utilizes the checkout procedure for the equipment.

10.
HEALTH, SAFETY, AND INFECTION CONTROL
a   Adheres to health, safety, infection control policies and resource utilization standards by:
- Complying with employee health requirements.
- Maintaining a clean and safe environment.
- Adhering to and promoting safety practices and identifying and reporting hazards, including:
    Using equipment safely and correctly.
    Using proper techniques to avoid work related injuries.

- Using Universal Body Substance Precautions.

b   Demonstrating knowledge of emergency response/disaster plan.

c   Demonstrates proper food handling and safety techniques.

**Rating/Comments** ☐ 3
Susie adheres to the health, safety, and infection control policies set forth by the facility. She also demonstrates knowledge of emergency response and disaster plan. She uses proper procedure for handling food. Susie cubicle is cluttered.

**11.**
**PERSONNEL & PRODUCTIVITY**

a   Adheres to hospital/departmental personnel policies
  • sexual harassment, violence in the workplace.
b.  Manages work time effectively, efficiently and productively by organizing and prioritizing work to maximize productivity.
c.  Reports unscheduled absences in a timely fashion
d.  Maintains appropriate level of attendance
  • No more than 1 unscheduled absence per month on average.
e.  Reports to work is a consistently punctual fashion

| 3 | Rating/Comments |
|---|---|

During this reporting period, which consist of 15 months, Susie has called in sick on 13 occasions, only 2 of them were on her Friday (2/24/01 and 8/11/02). She has reported all of these to the department in a timely manner. Susie has had no episodes of tardiness during this reporting period. She adheres to the hospital and department policies regarding sexual harassment and violence in the workplace.

**12.**
**LEADERSHIP**

a.  Participates in Performance Improvement activities.
    Makes appropriate suggestions for program development and the improvement of department practices.

| 3 | Rating/Comments |
|---|---|

Susie has not participated in any performance improvement activities during this reporting period. She does make appropriate suggestions for program improvement during department meetings.

CCSF 00032

## III. Overall Evaluation

| Competent and Effective | Exceeds Standards | Outstanding | Development Needed | Unacceptable |
|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ |

## IV. Work Plan for Next Report Period:

1) To Continue to work on her care planning skill, further developing plans that are specific to resident's needs and that measurable.

## V. Recommendations:

## VI. Reporting Manager

1. NAME, WORK ADDRESS
Lisa Randon
375 Laguna Honda Blvd.
San Francisco, CA

2. CLASS No. AND TITLE
2588 Health Worker IV

3. DATE OF REPORT
7/25/02

4. CONFERENCE REPORT WITH (Manager's Signature)

5. SIGNATURE
William B. Feng for Lisa Randon

## VII. Employee's Statement (See Handbook for Statement of Employee Rights)

| ☐ I AGREE WITH THIS REPORT. | ☐ I DO NOT AGREE WITH THIS REPORT: SECT.___ NO.___ | 2. DATE OF COUNSELING INTERVIEW |
|---|---|---|

☐ I REQUEST A CONFERENCE WITH THE REVIEWER

☒ REBUTTAL ATTACHED.   ✱ EMPLOYE REFUSES TO SIGN PERFORMANCE APPRAISAL

3. SIGNATURE CERTIFIES I HAVE READ REPORT
✱

## VIII. Reviewer's Certification

1. NAME, WORK ADDRESS
WILLIAM G. FRAZIER
LAGUNA HONDA HOSPITAL
375 LAGUNA HONDA BLVD.
SAN FRANCISCO, CA 94916

2. CLASS No. AND TITLE 2557
DIRECTOR OF THERAPEUTIC ACTIVITIES

3. DATE OF REVIEW
8/7/02

5. ☐ I CERTIFY THAT I HAVE REVIEWED THIS REPORT.

☐ I HAVE TAKEN THE FOLLOWING ACTION:

4. DATE OF CONFERENCE / INITIALS OF THOSE PRESENT

6. SIGNATURE
William B. Feng

CCSF 00033

August 6, 2002

Attention: Activity Therapist Supervisor and Director of Therapeutic Activities

In Rely to: Perormance Criteria and Rating Comment

As the Activity Therapy for Ward D3, I have always strived to be a good teamplayer in helping to enrich the quality of life and functional abilities of the residents. In order to reach and maintain this goal, activities must satisfy floor -based (D3) or hospital-wide based .

Before signing my performance standards, I have a few questions and concerns.

Question2  Ducumentation My overall rating in this area was "3". During the months of September 2001 and January 2002 a shared unit was displaced. The overall rating on time completion increased by 7% (89% to 96%). Having a different viewpoint from others in the unit and a missing MDS sheet for September which is Susie's vacation are these the reasons for a rating of "3".

- Question3  Planning My overall rating in this area was a "3". My calendar at times weren't very legible. Which calendar (large or small)? Did my ideas not appear logical? In response to the one month in which a food order was not given to the kitchen staff, private donations were provided, and this was a mini food outing. The patients enjoyed a change in the food attire.

Question4  Implemetation My overall rating in this area was a "3". I have always enjoying the implementation of unit based and floor wide activities. In all my years of arranging and coordinating the Black History Program, this was one year I felt very belittled. I felt as if the supervisor for this program saw only the negative in each of the steps that were implied by myself. I felt a sense of lassitude and reluctance from the supervisor of this program. The Director of Activities and the Activity Therapist Supervisor expressed the desire for the theme of the Black History Program to be educational. The Montgomery Boycott fulfilled this request. My question is how many other hospital wide programs are educational? A change of the performing date of the Black History was made 2 weeks before the original date. Why? The musical performers were to acquire monies upon the completion of performance, but the performers received the monies late. The supervisor of this event was to have arranged parking space for the performers , but this didn't materialize? To be a good teamplayer and to keep conformity within the Department, there are many other wonderful hospital wide programs; I know that I can accomplish many great things working with another program.

Question7  Communication My overall rating was a "3". One of the requirement of having a winning team, one must be willing to accept criticisms. I have always tried to be open and non-judgmental to different views. To be critique in a postive sense can only promote. My model is to be attentive and empathy to my colleagues in order to uphold a good working relationship.

Question8  Patient, Visitor, and Staff Relations &Ethics My overall rating was a "3" in this area. I am glad that I meet the requirement for a professional appearance. The items that surround my cubicle are organized in a manner that I can find and know where each need item is placed. If my cubicle appeared cluttered to the Supervisor of the Activity Therapy Department, constructive feedback would have been greatly accepted before the performance criteria. I can accept the statement that I will voice my opinion and complete the task, but I will not accept the statement--mumble under her voice and completes the task. Mumbling contradicts demonstrating good interpersonal skills.

Question10 Health, Safety &Infection Control My overall rating was a  "3" in this area. I can once again see the issue of a clutter cubicle was a concern. May I reiterate the statement: the items that surround my cubicle are organized in  a manner that I can find and know where each need item is placed. Maybe a help constructive statement(concerning cluttered cubicle) was need for whole Department?



CCSF 00034

Question11 Personnel & Productivity My overall rating was a "3" in this area. Although organizing and prioritizing work to achieve maxium production were not addressed, I attribute this as a reachable goal each working day. The deviation(2 days 2/24/01 and **8/11/02** not sure of correct date)Susie's Fridays did this manifest as the beginning of a problem? My work schedule is Tuesday thru Saturday.

Question12  Leadership My overall rating was a "3" in this area. I felt in this area I participated in performance improvement activities. I have been a regular Activity Therapist for Tuesday's Social Night; I have worked with 3 different Activity Therapists on Tueday's Social Night. The Tueday's Social Night has improved with the suggestions of myself and the Director of Therapeutic Activities. There are now Spin the Wheel (with prizes) and Wheel of Fortune and Family Feud games. At the community meeting with D3 residents, new ways are always discussed to improved performance activites;after much brain storm, the idea is present to the Activity Therapist Supervisor and the Director of Therapeutic Activities.

In conclusion, I would like to thank the Activity Therapy Supervisor and the Director of Therapeutic Activities for this opportunity listening and responding in a positive way to my concerns and questions. My goal to promote a helpful and healthy working relationship with my colleagues and residents. I willing to listen and to learn and to accept all ways that will enrich and enhance unity.

Respectfully,

Susie

CCSF 00035



## INTRADEPARTMENTAL MEMORANDUM
### Activity Therapy Department

**To:** Susie Abram
**From:** William Frazier
**Re:** Interactions Related to Proposed Cooking Activity on D3
4/13/01

On Tuesday, April 10th, 2001, we had a discussion in the hallway on B-400 during which I learned of your plans to fry chicken on D3 as part of a food activity that you had planned with your residents. I indicated to you that staff form the Nutritional Services Department had expressed their concern about the frying of food on D3 that had taken place in the past. I told you that I would not ask you to change the activity, but I would consult with Nutritional Services to determine their specific concerns for future planning.

You came to my office today to express your concern about the interaction that we had yesterday. Your tone of speech was hostile in my opinion. I explained my reasoning for questioning the activity. I again, told you that you would not be required to change your activity. You indicated that you would not implement the activity because you were concerned that I was attempting to create a situation that would have negative consequences for you. You also indicated that my questioning you about the activity was inappropriate.

I immediately went to Nutritional Services to consult with them on your proposed activity. I negotiated an arrangement that would satisfy their concerns and allow you to implement the activity.

Upon return to the Activity Therapy Department, I encountered you in the hallway and requested to speak to you. I offered my apologies for any misunderstandings or hard feelings. Your turned and walked away and said that you did not want to speak with me. I requested that you return to discuss the issue with me twice. You continued to walk away and refuse to speak with me.

As the Director of Therapeutic Activities, I am ultimately responsible for the actions the Activity Therapy staff. Resident safety is a primary consideration for any operation or activity at Laguna Honda Hospital. Not questioning a staff member on a safety related matter would be negligent on my part.

I am very concerned about your behavior related to this issue. You have insinuated accusation that I am creating situations specifically to harm your reputation and standing within the organization. You refused to comply with a direct request from a supervisor. You have failed to professionally interact with me regarding an issue basic to the operation of the hospital.

(What Supervisor? What request?



It is my opinion that I have acted in good faith on this issue. I expressed my concern about the safety of the activity, but gave you approval to proceed. Despite your hostility and accusations, I took time from my schedule to consult with Nutritional Services and negotiate a settlement. I offered my apologies to you despite the fact that my involvement in the issue was appropriate and well within my rights and responsibilities.

My intention in writing this memorandum is to help you understand my point of view related to this issue and facilitate a more effective working relationship with you.

CC: Lisa Randon

**1995 – 2000**

Jamie Dunn was the Director at this time.

August 1991. I have letters from co-workers discussing Jamie Dunn.

People were told that if they associated with me, Jamie would make their lives miserable.

The Supervisor, Helen Zizler, was told that she had to harass me and if she didn't, the Director would make her life miserable.

I was suspended for three days by Jamie, she said that I pushed her in the cafeteria; she had no witnesses and the Union gave me no representation.

People treated me as if I had AIDS. Co-workers were told that they couldn't talk to me.

Audrey came to my cubicle to talk to me; when she heard Jamie's voice, she crouched under my desk. Audrey told me she would get in trouble if Jamie saw her talking to me.

I hired an attorney, Steven Litman. He prepared the case for trial but backed out before submitting the proper paperwork with the court, as he was afraid his career would suffer if he represented me suing the City.

I was off on Worker's Compensation leave.

Helen Zizler had a case against Jamie Dunn; I believe it was settled out of court.

**2001 – 2005**

Bill Frazer became the Director.

Bill didn't like my behavior; he said I wouldn't ride the elevator or bus with him.

Bill said I created a hostile work environment for him, and I was only back at work two weeks.

Bill expected to see 60 residents during the night activity but usually only 20 residents would attend.

Bill changed the date of the 2001 Black History Month program 3 weeks before the event, which made it difficult for the band and the performers to adjust their own calendars. He did not have payment ready the day of the program, as was promised.

Sandra Johnson called a meeting because she was very upset with Bill on how he handled the Black History Program. Bill became angry in the meeting. He first asked us to express our feelings and then he got angry and then wanted to leave the meeting.

I was doing a fishing bus trip. I had gone beforehand to make sure the bus would fit and that it was a safe environment for the residents (this was done on my own time). One of the supervisors, John Chan, said that the bus wouldn't fit and that maybe I should cancel my fishing trip. They made it difficult for me to complete this activity.

1

On April 3, 2001, Bill said that one of my colleagues had a complaint about me but wouldn't tell me who the person was. He never attempted to resolve the situation by bringing the issue to my supervisor or bringing the two parties together. He took me downstairs to HR to the Personnel Analyst. Then they called the colleague in. I feel this could have been resolved without being escorted to the Personnel Analyst.

Bill said that I had a reputation that every time I cook people became ill; this interaction related to my cooking activity took place on 4/13/01.

I was talking in the department to another co-worker; Bill wrote me a letter telling me he wanted to meet with me about my behavior. I did have Union Representation. When the Union asked who complained, he stated himself and Christine Hansen.

Also on April 24, 2001, I requested extra help from Laura Blue. She agreed to move the morning activity to 11:15 am, so I was able to meet with her in the morning hours. I thought this showed I was trying to better the situation.

Lisa Randon (This is her maiden name). She harassed me to an extent, one example is when there was a meeting on 2/12/02, to discuss MDS' and it turned out the meeting was really about my behavior and attitude. I spoke to my Union Representative, who in turn spoke to Lisa. Lisa wrote me a letter apologizing and saying the meeting should have been about MDS' and not my behavior (I have the letter).

Christine Hansen then became my Supervisor.

Christine said that I intimidated her because I was too sure of myself. ✓

Christine also walked past me with her dog Kimo and told Kimo to not bother me as I was afraid of him. ✓

Barbara Teramina got into a shouting match with Hank and slammed her office door and stayed in her office with the door closed for one hour. No one was written up for this incident.

Cheomi and Christine got into a shouting match and no one was written up for that.

Christine and Fong also got into a shouting match and he wasn't written up or taken downstairs to HR.

The first supervisor was Paul ?. He called me a bitch. After I went to him and told him I didn't appreciate that language, he left me alone.

In 2002, I was written up and given a three-day suspension that the Union is still fighting.

October 2002. I went on vacation and when I returned to work, I found that Christine had cut ✓ the padlock on my personal locker and left CD's and other belongings out in the open.

2

2003. When I turned in my hand-written monthly calendar, she threw it back at me and said that I had to do it on the computer; but she offered no computer training. She also told my co-workers that they could not help me with the computer. One of my co-workers, Lynn, refused to use the computer and went to Bill Frazer to discuss it. She was allowed to turn in her hand written calendar. Bill said I had a bad attitude and that I refused to use the computer.

On a scheduled bus trip to take 13 residents to Cash Creek, 4/2/03, Christine told the volunteer coordinator, Bob Dell, that I could only take one volunteer (when in reality I needed 3 or 4 volunteers). On this same bus trip, we were late returning to the hospital and Christine was there waiting. She questioned why we were late but I told her that she would have to talk to the bus driver. Also during this trip, Bill said that I had instructed a resident to go to Bill, and ask him to allow her to go on the bus trip; this is not true, I never told the resident to speak with Bill.

Christine said I wasn't allowed to talk with my co-worker during an activity; she told me we couldn't sit together.

5/9/03. I was written up when I took a group of residents to Chevy's. The Spanish speaking bus driver ordered the food and the bill came to $1.90 over the allotted amount. Although I paid the difference with my own money, I was still disciplined for this action.

A letter was written to Christine on May 13, 2003, regarding job performance.

Christine threatened me with her dog saying that if anyone yelled at her, Kimo, the dog, would eat them up. Kimo is an abused/adopted pit bull mix.

The dog came into my cubicle and at my lunch.

LuLu, the dog, bit at me three times. It's impossible to work in a safe environment with dogs snapping at and threatening me.

In a meeting with Christine, I requested that we not meet in her office, because of the dog. She escorted me downstairs and brought the HR Representative into the meeting, without giving me the opportunity to have my Union representative present.

As part of my development plan, I was ordered to assist in transporting at least 4 residents to Marin Hall for each activity when my co-workers only brought 1 or 2 patients.

Christine let Kimo the dog off the leash and he came into my cubicle and growled at me; I was so scared I urinated all over myself.

Christine pits people against each other. She told one of the Nurse Managers that I was a problem. She also told another co-worker, Tracy, that I was a problem.

At one IDT meeting, a few of us (the Nurse Manager, Doctor, Social Worker, Dietician and myself) were talking about the war. Christine later told me that the Nurse Manager reported that I had said something inappropriate at the IDT meeting. But, when the Social Worker, Jean Creeley, asked the Nurse Manager what was said, she didn't know.

August 22, 2003. One of my suspension write ups was left on a computer for anyone to read. Three or four of my co-workers called the Union Representative to report it. I wrote, Rubin, my

3



Union Representative, as I was very upset. I wrote that I cannot work under Christine any longer and that we need to meet. He gave me no support. He wrote a letter stating that he couldn't come to the hospital for every little thing.

When I asked the Union Representative about my personnel evaluation, Rubin wrote that the Union doesn't have a right to interfere with personnel evaluations.

On 9/3/03, I was on vacation until October.

10/22/03. Bill accused me of leaving three minutes early when other people would leave 2 – 3 minutes early – but I left based on the clock on the wall. Co-workers would change the clock on the wall. In 23 years, I have never been late and always arrive early to work.

In March 2004, Christine put a sign on her office door that says "Never mind the dog, beware of the owner".

Two of my long coats were cut into an "L" shape. When I called security, they said that someone had cut it with a scissors.

In September of 2004, I returned to work. On that day, they wanted to have my discipline meeting.

9/17/04. The dog was off leash again. Christine walked behind me with Kimo telling Kimo not to bother me as I don't like him.

11/12/04. When I went to Bill to talk to him about the dogs, he stated to me that I didn't start complaining about the dogs until I started getting written up. He said the dogs would continue to come as they were good for the patients – and that the dogs were trained. (Lulu and Kimo). Lulu has snapped and tried to bite me on three different occasions. I can't access the supplies area as that is where Lulu is kept, I need to ask co-workers to get the supplies I need for my activities. I can't leave the department without passing Christine's office, where Kimo is kept. Kimo is tied by a leash to her door.

During a garage sale event on 12/6/04, (that I and my co-worker Lynn, thought of - to raise money so residents could use it to gamble) I was written up for being dishonest with the funds. I brought things from home that the residents could purchase, with the money going to the residents for the gambling trip. Christine asked me how much money was made, but I hadn't counted it yet, so I guessed $30 or $40 dollars. Later, Lynn asked how much as made and I said about $100; Lisa overheard and told Christine was I said – so I was written up.

Nov 13-
I collapsed at work at the end of 2004 and was off of work for several months. When I returned to work, I found all of my belongings had been packed up, 20 boxes, from my cubicle. Many personal items were put out for grabs – so anyone could take them.

On April 7, 2005, there was a Memorial Committee Meeting. We discussed the lack of moral among the staff. It was said that moral was low and that a survey was taken. Staff wanted more recognition. Staff was frustrated by the inconsistency of workloads. There was a need to remedy the situation soon. The group discussed the development of a recognition system. They said this would be tricky as there could be a claim of favoritism; it could be discouraging to

motivate the staff. Also, certain supervisors required a higher level of work during the holidays. This may no longer be an issue as the supervisor cut the activities to two per holiday.

On April 29, 2005, Barbara Teramina sat in on one of my activities for an hour and a half. She didn't say anything, just took notes the whole time.

June 8, 2005. The dogs were loose in a staff meeting; near a table with food.

Within the past three months, during a POD meeting, the dog was off the leash and barking. I was afraid and told my supervisor. She didn't remove the dog, just moved me to the other side of the table.

Letter of reply re: performance appraisal on 8/6/02.

Letter from Christine 9/2/02.

I was written up on 12/11/02:
        Inattention to duty
        Insubordination

Letter sent to the Union on 12/19/02.

Letter to Bill re: evaluation on 7/23/03.

I was written up on 8/21/03:
        Inattention to duty
        Misappropriation of program funds
        Received a one day suspension

Letters to and from the Union on 8/21/03.

Letter to Christine on 9/2/03.

Letter sent to the Union on 9/30/03.

Conference on 10/7/03.

I was written up on 10/16/03:
        Inattention to duty
        Failure to meet goals of the development plan
        Received a two day suspension

Disciplinary actions, 10/23/03.

Letter to Union on 11/7/03.

Supervisor incident report on 11/13/03.

I was written up on 6/16/05:
        Unprofessional behavior

Yelling in the hallway (The most recent write up I received was from Bill for talking in the department. He said I slammed my hand on the shredder board and that I was yelling.)

I had a conference with Bill on 6/23/05.

Review meeting, 7/6/05.

July 23, 03 Fog was yelly @ Christine you could
hecheal all oun sept. Fog was not escrted
to HR eihe I was I was not yelly

NAME: (Last) ABRAM    (First) Susie    (Mid. Int.) M

SOCIAL SECURITY NUMBER 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

## SAN FRANCISCO CITY AND COUNTY EMPLOYEES' RETIREMENT SYSTEM

### 30 VAN NESS AVENUE, SUITE 3000
### SAN FRANCISCO, CA 94102

## APPLICATION FOR VOLUNTARY SERVICE RETIREMENT

*Do not Write With Pencil*

*To the Retirement Board, San Francisco City and County Employees' Retirement System*

RETIREMENT No. A9543

July 26, 2005

In accordance with the law governing the Retirement System, I hereby make application for retirement from active service as a **2587 Health Worker III**
Title of Position

in **DPH LHH 81**
Department and Division or Branch of Department

of the City and County of San Francisco.

I request that my retirement become effective on the **16th** day of **July** **2005**

I was born **September** **6** **1945**
Month    Day    Year

I am **Unmarried**, my spouse **N/A**
(married or unmarried)    (First Name)    (Middle Initial)    (Last Name)

to whom I was married on **N/A**, having been born on **N/A**
(month)    (day)    (year)    (month)    (day)    (year)

I have the following children under 18 years of age:

Name    Date of Birth

N/A    N/A

My present home address is **5145 Twincreek Ct. Antioch CA 94509**
Street and Number    City    State    Zip

SIGNATURE OF APPLICANT X **Susie Abram**
First Name in Full

WITNESS: **W Black**

Address **SFERS**

SOC. SEC. NO. OF SPOUSE **N/A**

F816 8/85



CCSF 01423

000019