1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  City Attorney
   ELIZABETH SALVESON, State Bar #83788
3  Chief Labor Attorney
   JONATHAN C. ROLNICK, State Bar #151814
4  Deputy City Attorney
   Fox Plaza
5  1390 Market Street, Floor #5
   San Francisco, California 94102-5408
6  Telephone:    (415) 554-4247
   Facsimile:    (415) 554-4248

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
and WILLIAM FRAZIER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSIE ABRAM,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, DEPARTMENT OF PUBLIC HEALTH; WILLIAM FRAZIER, DIRECTOR OF THERAPEUTIC ACTIVITIES, LAGUNA HONDA HOSPITAL<br><br>    Defendant. | Case No. C07-3006 PJH<br><br>*E-filing case*<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:    June 18, 2008<br>Time:    9:00 a.m.<br>Courtroom: 3, 17th Floor<br>    Hon. Phyllis J. Hamilton<br><br>Action Filed: June 8, 2007 |

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................................1

ARGUMENT ....................................................................................................................................1

    I.    ABRAM CONCEDES HER CLAIMS ARE PREMISED ONLY ON PROPOSED DISCIPLINARY ACTION OCCURRING IN AUGUST 2003 OR LATER ..............................................................................................................1

    II.   ABRAM'S CLAIMS OF RACIAL DISCRIMINATION AND RETALIATION FAIL BECAUSE ABRAM HAS FAILED TO SHOW ANY CAUSAL LINK BETWEEN HER RACE AND THE CONDUCT AT ISSUE, OR THAT DEFENDANTS' ARTICULATED REASONS FOR THEIR ACTIONS ARE PRETEXTUAL ..........................................................................................................2

    III.  THE CITY AND FRAZIER ARE ENTITLED TO SUMMARY JUDGMENT ON ABRAM'S RACIAL HARASSMENT CLAIMS BECAUSE SHE CANNOT SHOW THAT HER WORKPLACE WAS PERMEATED WITH DISCRIMINATORY INTIMIDATION, RIDICULE AND INSULT ....................4

    IV.  ABRAM FAILS TO ESTABLISH CITY'S LIABILITY UNDER *MONELL* FOR THESE SECTION 1981 CLAIMS ................................................................5

CONCLUSION................................................................................................................................6

**INTRODUCTION**

A party opposing summary judgment may not rest on the mere allegations of her pleadings. Rather, she must present admissible evidence of a genuine issue for trial. Fed. R. Civ. Pro. 56(e)(2), *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Here, Abram cannot survive summary judgment because she fails to offer any admissible evidence to raise a genuine issue for trial that the City's conduct, or that of William Frazier, was motivated in any fashion by racial or retaliatory *animus*. She repeatedly asserts that "substantial credible evidence" exists to defeat summary judgment, but offers nothing more than her own inadmissible conjecture and conclusions as "fact". In particular, she contends that evidence of racial *animus* exists because: (a) she had "always performed her work satisfactorily and at least as satisfactorily as her fellow white Activity Therapists"; and (b) Defendants treated her differently than her "white counterparts similarly situated, whose performances were no better than Abram's." (Plaintiff's MPA at 5:4-6, 5:12-15, 7:4-7, 7:25-8:3.) But Abram's assertions regarding the quality of her job performance or the quality of the job performance of her co-workers is pure speculation and is not supported by any factual detail and, thus, is not admissible evidence. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995).

Given the dearth of evidence offered by Abram, it is clear that the City and William Frazier are entitled to summary judgment because Plaintiff cannot meet her burden to show either a *prima facie* case under any theory of relief, or that the City and Frazier' articulate reasons for their actions are pretextual. Moreover, the City is entitled to summary judgment because Abram has failed to carry her burden to show municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**ARGUMENT**

**I.   ABRAM CONCEDES HER CLAIMS ARE PREMISED ONLY ON PROPOSED DISCIPLINARY ACTION OCCURRING IN AUGUST 2003 OR LATER**

In her opposition, Abram concedes that her complaint arises out of: (a) disciplinary actions initiated in August and October 2003; and (b) the City's efforts to pursue these disciplinary matters that allegedly resulted in intolerable working conditions causing her to resign. (Abram MPA at 3:18-21.) She does not challenge any actions occurring before that time. (*Id*.) Accordingly, the laundry

list of incidents allegedly constituting violations of Section 1981 occurring before that time, as more fully detailed in Defendants' moving papers, are not at issue.

## II. ABRAM'S CLAIMS OF RACIAL DISCRIMINATION AND RETALIATION FAIL BECAUSE ABRAM HAS FAILED TO SHOW ANY CAUSAL LINK BETWEEN HER RACE AND THE CONDUCT AT ISSUE, OR THAT DEFENDANTS' ARTICULATED REASONS FOR THEIR ACTIONS ARE PRETEXTUAL

The undisputed evidence shows that the disciplinary actions initiated by Christine Hanson against Abram in August and October 2003 were motivated by legitimate and documented concerns regarding the quality of Abram's job performance. The August 2003 disciplinary action arose as a result of a "summer/garage sale" Abram organized for the psychosocial cluster. As detailed in the Employee Conference Form the activity was disorganized, Abram failed to ensure cleanup after the activity, and there were significant questions regarding the funds raised during this activity. (Hanson Decl. ¶¶ 20-22, Exh. H.) Hanson recommended a two-day suspension. (*Id.*) Bill Frazier reviewed this disciplinary matter and reduced the recommended discipline to a one-day suspension. (*Id.*; Frazier Decl. ¶¶ 30-31, Exh. I.)

Hanson initiated the October 2003 disciplinary action because of Abram's failure to meet the goals of her Development Plan. (Hanson Decl. ¶¶ 24-25, Exh. I.) As detailed in the Employee Conference Form, Abram failed to show satisfactory performance improvement in several of the core competency areas identified in the Development Plans. (*Id.*) Hanson recommended a four-day suspension. (*Id.*) Bill Frazier also reviewed this disciplinary matter and reduced the recommended discipline. (Frazier Decl. ¶¶ 32-34, 37, Exh. J.)

Plaintiff contends that her job performance did not warrant those disciplinary actions. But she offers no admissible evidence to show that those actions were motivated by her race or her alleged complaints of discrimination. Instead she simply asserts that racial or retaliatory *animus* must have motivated these decisions because she had always performed her duties well in the past, and at least as well as her co-workers. But Abram's assertion regarding the quality of her job performance in the past is self-serving and a mere conclusion, not admissible factual evidence of the quality of the job performance in the past or at the time in question. Moreover, she has no evidence to demonstrate any personal knowledge regarding the quality of her co-workers' job performance or their disciplinary

1  histories, if any.  She has conceded that:  (a) she never heard Frazier or Hanson utter a racial slur or
2  talk about African-Americans in a derogatory fashion (Abram Depo. 38:2-6, 46:8-18.); (b) Frazier did
3  not "single out" other African-American Activity Therapists for unwarranted discipline (Abram
4  Depo. 40:8-22); and (c) she had no personal knowledge as to whether Hanson disciplined other
5  employees for conduct similar to the conduct resulting in discipline against Abram.  (Abram Depo.
6  59:16-60:8.)  There simply is no evidence raising a genuine issue for trial regarding a racial or
7  retaliatory motivations for these actions.  Thus, Abram's *prima facie* case fails.

8  Even assuming Abram establishes a *prima facie* case, she cannot meet her burden of proof to
9  show that the defendants' articulated reasons for these actions are pretextual.  *Reeves v. Sanderson*
10 *Plumbing Products, Inc.,* 530 U.S. 133, 146-150 (2000).  Again, she simply contends that there is
11 "substantial evidence" that the articulated reasons are pretextual, but fails to put forward any
12 admissible evidence challenging those articulated reason as being untrue, unworthy of credence, or a
13 pretext for racial discrimination or retaliation.

14 With respect to her constructive termination claim, Abram's "evidence" is similarly lacking.
15 She does not offer any admissible evidence that her that her working conditions were sufficiently
16 intolerable to meet the high hurdle of showing such an adverse action.  A constructive discharge
17 claim arises where an employee's decision to resign is deemed reasonable because she was forced to
18 work under "unendurable working conditions." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir.
19 2007).  The working condition must become so "sufficiently extraordinary and egregious" as to
20 overcome the "normal motivation of a competent, diligent, and reasonable employee to remain on the
21 job." *Poland*, 494 F.3d at 1184.

22 Abram does not offer any evidence to show that her resignation occurred under such
23 unendurable, extraordinary, and gregarious conditions.  She concedes that the only individuals who
24 subjected her to discrimination were Frazier and Hanson. (Abram Depo. 25:2-11.)  But Hanson
25 stopped supervising Abram in November 2003, more that a year and one half before her resignation.
26 The only conflict between Abram and Hanson during this period of time concerned the presence of
27 Hanson's dog in the workplace. ( Hanson Decl. 27; Frazier Decl. 39-41, Exh. M.)  The evidence
28 shows that Frazier effectively dealt with this September 2004 issue by restricting Abram's exposure to

the dog. (*Id.*) There is no evidence of any further conflict with Hanson and Abram concedes that she had no problems with Barbara Taoramina, her supervisor at the time of her resignation. (Abram Decl. ¶ 36.)

Abram's constructive termination claim rests on her assertion that the Frazier's efforts to follow through on Abram's grievance of the August and October 2003 disciplinary actions created an intolerable working environment. But these actions were nothing more than the typical day-to-day managerial activity that occurs every day in the workplace. Further, the continuation of this process was a result of Abram's insistence on grieving these matters. Frazier made an effort shortly after Abram's return from leave to resolve these issues so Abram could move forward. (Frazier Decl. ¶¶ 31-38, Exhs. I-L.) Abram rejected that overture. (*Id.*) Moreover, this process ran of an extended period of time through no fault of Frazier or the City. This conduct falls far short of the high bar set for constructive discharge claims and defeats any slowing of adverse employment action.

Because Abram has failed to present any evidence of racial or retaliatory animus, or pretext, the City and Frazier are entitled to summary judgment on her Section 1981 discrimination and retaliation claims.

### III. THE CITY AND FRAZIER ARE ENTITLED TO SUMMARY JUDGMENT ON ABRAM'S RACIAL HARASSMENT CLAIMS BECAUSE SHE CANNOT SHOW THAT HER WORKPLACE WAS PERMEATED WITH DISCRIMINATORY INTIMIDATION, RIDICULE AND INSULT

Similarly, the City and Frazier are entitled to summary judgment of Abram's Section 1981 harassment claim. To prevail on a hostile workplace claim, the plaintiff must show that her "workplace [was] permeated with discriminatory intimidation, ridicule and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) The plaintiff must prove that, considering all the circumstances, her working environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Again, Abram fails to offer any evidence to meet her burden. She fails to offer any evidence of a workplace permeated by severe or pervasive discriminatory intimidation, ridicule, or insult.

Again, she conceded during deposition that neither Frazier nor Hanson ever used racial slurs or spoke of African-Americans in a derogatory fashion. She has offered no admissible evidence of racial animus with respect to any of the conduct she challenges. In fact, her claim appears to rest on little more than the fact that she is African-American. The conduct she challenges involved Frazier and Hanson efforts to supervise her job performance, *e.g.* conducting performance evaluations, initiating discipline, or discussing the manner in which she carried out a particular program activity. Although it is clear that Abram did not welcome these events and believed they were unfair, no reasonable person would find supervisors exercising their supervisory authority in these circumstances to be severe or pervasive intimidation, insult or ridicule, or objectively or subjectively offense.

### IV. ABRAM FAILS TO ESTABLISH CITY'S LIABILITY UNDER *MONELL* FOR THESE SECTION 1981 CLAIMS

As discussed in the City's moving papers, the City is liable under Section 1981 only if Abram can meet her burden of proof to show that her alleged injuries resulted from an unconstitutional municipal policy, practice or custom. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691 (1978). As an initial matter, the City cannot be held liable for the conduct alleged here because Abram has failed to present evidence that any of the alleged conduct was unconstitutional, *i.e.* either based on an illegal discriminatory or retaliatory motive. Second, Abram has not pointed to any unconstitutional municipal policy, practice, or custom.

Rather, her claim appears to rest upon the notion that the City is liable under *Monell* for Frazier's conduct. However, in order for the City to be liable for the constitutional tort of its employee, that employee must have "final policy-making authority" over the matter in question. *City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988). In its moving papers, the City established that for policies regarding personnel matters, the Civil Service Commission is the final policymaking authority. The conduct alleged here cannot be attributed to the Civil Service Commission and Abram offers no evidence or argument supporting such a contention.

Instead she offers an incoherent argument regarding a City employee, Ed Lee, who has no role in this case.[1]  Without citation to evidence or legal authority, Abram appears to contend that a department head, deputy, or supervisor's status alone bestows on that individual the legal status of a final policy maker.  However, the fact that a city employee has independent decision-making power over hiring, firing, or disciplinary matters does not render him or her a final policymaker for purposes of municipal liability.  "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondent superior* liability." *Prapotnik*, 485 U.S. at 126; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986) ("[I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability.  This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.").

As Abram fails to bring forth any evidence that her injuries resulted from an unconstitutional municipal policy, practice or custom, summary judgment on Abram's discrimination, retaliation, and harassment claims should be granted on this ground alone.

## CONCLUSION

For all the forgoing reasons, the Court should grant summary judgment in favor of the City and William Frazier on all of Abram's claims.

---

[1] Abram's counsel appears to have lifted his argument in whole or in part from a brief in another case, *Montiel v. City and County of San Francisco*, District Court Case No. C06-5486 SI, and refers to Ed Lee, former Director of the City's Department of Public Works.  There is no evidence that Mr. Lee has any involvement in this case.

1  Dated: June 4, 2008

                         DENNIS J. HERRERA
                         City Attorney
                         ELIZABETH SALVESON
                         Chief Labor Attorney
                         JONATHAN C. ROLNICK
                         Deputy City Attorney

                  By: s:/Jonathan C. Rolnick
                      JONATHAN C. ROLNICK

                      Attorneys for Defendants
                      CITY AND COUNTY OF SAN FRANCISCO and
                      WILLIAM FRAZIER