1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7    SUSIE ABRAM,

8              Plaintiff,                      No. C 07-3006 PJH

9         v.                                   **ORDER GRANTING MOTION
                                               FOR SUMMARY JUDGMENT**
10   CITY AND COUNTY OF SAN
     FRANCISCO, et al.
11
               Defendants.
12   _____/

13

14        Defendants' motion for summary judgment came on for hearing before this court on

15   July 23, 2008.  Plaintiff Susie Abram ("plaintiff"), appeared through her counsel, Curtis G.

16   Oler.  Defendants City and County of San Francisco ("the City") and William Frazier

17   ("Frazier")(collectively "defendants"), appeared through their counsel, Jonathan C. Rolnick.

     Having read the parties' papers and carefully considered their arguments and the relevant
18
     legal authority, and good cause appearing, the court hereby GRANTS defendants' motion
19
     for summary judgment, for the reasons stated at the hearing, and as follows.
20
                                    **BACKGROUND**
21
          This is an employment discrimination case.  Plaintiff Susie Abram is African
22
     American, and a former employee of defendant City and County of San Francisco.  Plaintiff
23
     alleges that she began work as an activity therapist for the City's Department of Public
24
     Health at Laguna Honda Hospital on April 4, 1982.  During the relevant time period, plaintiff
25
     worked under the supervision of individual defendant William Frazier, the Director of
26
     Therapeutic Activities at Laguna Honda, and under the direct supervision of Christine
27
     Hanson, an Activity Therapist Supervisor at Laguna Honda.
28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  As an activity therapist, plaintiff worked with an interdisciplinary team of health care

2  professionals to deliver certain services addressing the social and physical needs of the

3  residents the hospital including creating and planning on and off-campus activities for them.

4  See Declaration of Jonathan Rolnick ISP Summ. Judg. ("Ronlick Decl."), Ex. A at 10-11,

5  12-14.  Specifically, plaintiff worked with residents on the D3 psycho social cluster during

6  the alleged time period in question.

7  Plaintiff continued to work at Laguna Honda until on or about June 24, 2004, after

8  which plaintiff asserts that she was "compelled to officially resign from [her] position."  See

9  Complaint for Declaratory Relief, Injunctive Relief and Damages ("Complaint"), ¶ 6.  Plaintiff

10  alleges that her resignation was compelled due to defendants' unlawful discriminatory

11  employment practices, including false performance evaluations of plaintiff; unwarranted

12  threats of disciplinary actions; unwarranted disciplinary actions; humiliation; unwarranted

13  close scrutiny; continuing harassment; and continuing hostility.  Id. at ¶ 8.  Plaintiff asserts

14  that these actions were taken against her because of her race, color, and national origin,

15  and in retaliation for plaintiff's continuing protests of discriminatory conduct.  Id. at ¶ 9.

16  To that end, plaintiff filed her complaint against the City and County of San

17  Francisco and William Frazier (collectively "defendants") on June 8, 2007.  Plaintiff's

18  complaint alleges a single cause of action for violation of 42 U.S.C. § 1981.  See

19  Complaint, Prayer for Relief.

20  Defendants now move for summary judgment with respect to plaintiff's section 1981

21  claim.

22  **DISCUSSION**

23  A.    Legal Standard

24  Summary judgment shall be granted if "the pleadings, depositions, answers to

25  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

26  no genuine issue as to any material fact and that the moving party is entitled to judgment

27  as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of

28

United States District Court

For the Northern District of California

1  the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to

2  a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

3  verdict for the nonmoving party.  Id.  The court must view the facts in the light most

4  favorable to the non-moving party and give it the benefit of all reasonable inferences to be

5  drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

6  587 (1986).

7  B.     Analysis

8         The only issue before the court is whether summary judgment on plaintiff's section

9  1981 claim is warranted.  Section 1981 prohibits intentional discrimination in the "benefits,

10  privileges, terms and conditions" of employment.  See 42 U.S.C. § 1981(b); Metoyer v.

11  Chassman, 504 F.3d 919, 935 (9th Cir.2007); see also Gen. Bldg. Contractors Ass'n, Inc.

12  v. Pennsylvania, 458 U.S. 375, 391 (1982)(claims under section 1981 are limited to proof of

13  intentional discrimination).

14         Analysis of an employment discrimination claim under § 1981 follows the same legal

15  principles as those applicable in a Title VII discrimination case.  Id. at 930; see also Surrell

16  v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).  Those legal principles in turn

17  require adherence to the same test for establishing an inference of intentional

18  discrimination as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See

19  also Yee v. Dept. of Environ. Serv., Multnomah County, 826 F.2d 877, 880-81 (9th

20  Cir.1987).  Under the familiar McDonnell Douglas framework, a Title VII (and by extension,

21  a section 1981) claimant has the initial burden of establishing a prima facie case of racial

22  discrimination.  If the plaintiff satisfies this initial burden, the burden shifts to the defendant

23  to prove it had a legitimate non-discriminatory reason for the adverse action.  If the

24  defendant meets that burden, the plaintiff must then prove that such a reason was merely a

25  pretext for intentional discrimination.  See, e.g., Lindsey v. SLT L.A., LLC, 447 F.3d 1138,

26  1144 (9th Cir.2006).

27         Here, defendants target three theories of liability that plaintiff asserts as a basis for a

28

3

United States District Court

For the Northern District of California

1    section 1981 violation:  race discrimination, retaliation, and hostile workplace harassment.

2    Defendants argue that proof of each fails under the relevant McDonnell Douglas burden-

3    shifting approach, thereby warranting summary judgment in defendants' favor.  Additionally,

4    they assert that summary judgment as to the City is warranted due to plaintiff's failure to

5    establish an issue of fact as to Monell liability.

6         Each issue is considered in turn.

7         1.    Race Discrimination

8         Plaintiff claims unlawful race discrimination on the basis of two separate incidents:

9    first, a disciplinary action initiated against her in August 2003 and second, a disciplinary

10   action initiated against her in October 2003, both of which were allegedly being pursued by

11   defendants at the time of plaintiff's resignation in June 2005.[1]  See Opp. Br. at 4:18-21.

12   Declaration of Christine Hanson ISO Summ. Judg. ("Hanson Decl."), Exs. H, I.  The August

13   2003 disciplinary action was initiated by Hanson by way of an Employee Conference Form,

14   in which Hanson charged plaintiff with inattention to duty, failure to professionally manage a

15   "cluster wide" activity, and dishonesty.  See id. at Ex. H.  The charges stemmed from a

16   "summer/garage sale" that plaintiff had organized for the Laguna Honda residents.  While

17   Hanson recommended a 2 day disciplinary suspension, plaintiff objected to the report, and

18   the charges were reviewed by Frazier, who ultimately reduced the suspension to 1 day.

19   See id. at CCSF 00298-300, CCSF 00302-03.  The October 2003 disciplinary action was

20   also initiated by Hanson, who once again charged plaintiff with inattention to duty, and

21   specifically with failure to meet the developmental goals that had been set for plaintiff in

22   summer 2003, and failure to follow through with planned activities.  See Hanson Decl., Ex. I

23   at CCSF 00107-113.  This disciplinary action, too, was reviewed by Frazier, who ultimately

24   ordered a 2 day disciplinary suspension.  See id. at CCSF 00115.

25   _____

26        [1]    Due to plaintiff's concession that her claim is premised upon these two
     disciplinary actions only, defendant's argument that several of plaintiff's *other* possible
27   allegations are barred by the statute of limitations, is moot, particularly since defendants
     appear to concede that the two disciplinary actions in question properly fall within the
28   applicable statutes of limitations.

United States District Court

For the Northern District of California

1   To establish her initial prima facie case of race discrimination based on these

2   incidents, plaintiff must show that:  (1) she is a member of a protected class; (2) she was

3   qualified for his position; (3) she experienced an adverse employment action; and (4)

4   similarly situated individuals outside her protected class were treated more favorably, or

5   other circumstances surrounding the adverse employment action give rise to an inference

6   of discrimination.  See, e.g., Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d

7   840, 847 9th Cir. 2004);  McDonnell Douglas Corp., 411 U.S. 792 at 802.  Only then does

8   the burden shift to defendants to offer their "legitimate, nondiscriminatory reason for the

9   adverse employment action."  Lyons v. England, 307 F.3d 1092, 1112 (9th Cir.2002).

10   Here, the court's analysis begins – and ends – with plaintiff's prima facie case.

11   Plaintiff successfully meets the first and third prongs of the above McDonnell Douglas test.

12   It is undisputed that plaintiff is African American, and that she was, in fact, the recipient of

13   the two disciplinary actions mentioned above.  As such, plaintiff can establish that she is a

14   member of a protected class, and that she suffered some adverse employment action.

15   See, e.g., Saint Francis College v. Al-Khazraji, 481 U.S. 604, 612-13 (1987)(protected

16   classes are those identifiable because of their ancestry or ethnic characteristics); Woodson

17   v. Int'l Business Machines, 2006 WL 1195453, *4-5 (N.D. Cal. 2006)(defining adverse

18   action as a substantial change in the terms and conditions of employment that can include

19   a "reduction in an employee's potential for career advancement").

20   Plaintiff fails, however, to meet the second and fourth prongs of the McDonnell

21   Douglas test.  She has failed to establish either that she was performing according to

22   defendants' legitimate expectations, or that other employees with qualifications similar to

23   her own were treated more favorably.  Indeed, while plaintiff states that the "substantial

24   credible evidence in the record easily demonstrates that [she] has established a prima facie

25   case for racial discrimination...," see Opp. Br. at 5:22-24, plaintiff fails to introduce even

26   minimal evidence – aside from her own declaration – that might prove that her job

27   performance met defendants' legitimate expectations.  Such evidence might normally

28

5

United States District Court

For the Northern District of California

1    consist of positive performance reviews, admissions by the employer, or even expert

2    testimony as to an employer's legitimate expectations for the job at issue, and an analysis

3    of the plaintiff's performance in light of those expectations.  Similarly, with respect to

4    whether similarly situated employees not in her protected class were treated more

5    favorably, plaintiff has provided no evidence other than her own conclusory declaration that

6    fails to identify any comparators.  She has provided no declarations from other employees

7    or supervisors or even statistical evidence on this issue.

8         As for plaintiff's own declaration, it is wholly insufficient to give rise to an inference of

9    discrimination as it is comprised almost exclusively on improperly overbroad and

10   conclusory language.  While plaintiff states that paragraphs 20-22, 27, and 32-36 of her

11   declaration sufficiently establish her prima facie case, for example, those paragraphs

12   contain no particularized or detailed facts – just conclusory statements that defendants'

13   actions were unwarranted, and that other unidentified "white counterparts" were not

14   subjected to the same discipline.  See Abram's Decl. ISO Opp., ¶¶ 32-26.  This evidence

15   does not rise to the level sufficient to create a material dispute of fact with respect to a

16   prima facie case of discrimination.

17        Moreover, as the Ninth Circuit has stated, plaintiff's subjective belief, without more,

18   that the challenged employment action was unwarranted, or unnecessary, cannot create a

19   genuine issue of material fact.  See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270

20   (9th Cir.1996)(concluding, despite the plaintiff's claims that she had performed her job well,

21   that "an employee's subjective personal judgments of her competence alone do not raise a

22   genuine issue of material fact").  Plaintiff's declaration contains precisely the type of

23   subjective statements of belief that the Ninth Circuit has held fail to create a genuine

24   dispute of material fact.

25        Finally, even if plaintiff had been able to come forward with evidence of a prima facie

26   case of discrimination, defendants provided evidence of legitimate and nondiscriminatory

27   reasons for the two disciplinary actions in question.  Defendants have submitted evidence,

28

United States District Court

For the Northern District of California

1  for example, of plaintiff's May 2003 performance appraisal and developmental plan, and the

2  disciplinary actions themselves, as well as the testimony of Frazier and Hansen, in support

3  of the very real job performance difficulties that plaintiff was experiencing.  See, e.g.,

4  Frazier Decl. ISO MSJ, ¶¶ 24-25, 30-31, 32-33, Exs. G, I, J; Hansen Decl. ISO MSJ, ¶¶ 13-

5  15, 21-22, 25-26, Exs. F-I.  Yet, once again, the only evidence of pretext that plaintiff has

6  introduced to discharge her burden under the McDonnell Douglass framework, is plaintiff's

7  declaration.  And just as that declaration, standing alone, was insufficient to establish

8  plaintiff's prima facie case, it is also insufficient to establish pretext.  See Cornwell v.

9  Electra Cent. Credit Union, 439 F.3d 1018, 1028 fn. 6 (9th Cir. 2006)(a plaintiff "may not

10  defeat a defendant's motion for summary judgment merely by denying the credibility of the

11  defendant's proffered reason for the challenged employment action."); Schuler v. Chronicle

12  Broad. Co., 793 F.2d 1010, 1011 (9th Cir.1986).

13      In sum, although minimal evidence is sufficient to establish a prima facie case,

14  "when evidence to refute the defendant's legitimate explanation is totally lacking, summary

15  judgment is appropriate." Lindsey v. SLT L.A., LLC, 447 F.3d at 1148 (internal quotation

16  marks omitted).  Here, plaintiffs' evidentiary showing is entirely deficient, and fails on both

17  counts – it establishes neither a prima facie case, nor pretext.  Thus, summary judgment is

18  GRANTED in defendants' favor as to this theory of liability.

19      2.   Retaliation

20      For plaintiff to succeed on a claim for unlawful retaliation under section 1981, she

21  must establish "that [he or she] acted to protect [his or her] rights, that an adverse

22  employment action was thereafter taken against [him or her], and that a causal link exists

23  between those two events."  See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465

24  (9th Cir.1994).  The Ninth Circuit has specifically held that, in order to establish a prima

25  facie case of retaliation, a plaintiff must initially prove (1) she engaged in a protected

26  activity; (2) she suffered an adverse employment action; and (3) there was a causal

27  connection between the two.  See Bergene v. Salt River Project Agric. Improvement and

28

7

United States District Court

For the Northern District of California

1    Power Dist., 272 F.3d 1136, 1140-41 (9th Cir.2001).  Once established, the McDonnell

2    Douglas framework shifts the burden to the defendant to set forth a legitimate, non-

3    retaliatory reason for its actions, after which the plaintiff must produce evidence to show

4    that the stated reasons were a pretext for retaliation.  Id.

5         Here, plaintiff's lack of evidence extends to her retaliation claim.  While plaintiff

6    conclusorily states that she has satisfied all elements of her prima facie claim, see Pl. Opp.

7    Br. at 7:14-24, she fails to submit a single citation to any evidence demonstrating as much.

8    And looking at plaintiff's declaration, it contains only a single paragraph in which plaintiff

9    addresses the prima facie elements of her retaliation claim, and states that unwarranted

10   discipline was taken against her "because [she] continued to complain about the unlawful

11   discriminatory treatment of [her] by Frazier and Hanson to Frazier and Hanson and Willie

12   Ramirez in Human Resources who refused to listen to [her] complaints."  See Abram Decl.,

13   ¶ 33.  Aside from this conclusory statement, there is no identification of any instances in

14   which plaintiff complained of the discriminatory treatment, let alone any details of such

15   protected activity – i.e., dates, persons to whom plaintiff complained, subject of plaintiff's

16   complaints, etc.  In other words, once again there is nothing except plaintiff's own

17   conclusion to support her claim that she engaged in any protected activity, or experienced

18   the filing of disciplinary actions against her *because* of such protected activity.  For the

19   same reasons noted above, this is insufficient to establish a prima facie retaliation case.

20        And even if plaintiff had demonstrated evidence going to her prima facie claim, her

21   showing as to pretext, in light of defendants' evidence that a legitimate non discriminatory

22   reason for the disciplinary actions existed, fails for the same reasons identified above.

23        In sum, therefore, summary judgment is also warranted in defendants' favor as to

24   any retaliation claim asserted by plaintiff.

25        3.     Hostile Workplace Harassment

26        Unsurprisingly, the third and final theory of liability upon which plaintiff bases her

27   section 1981 claim – hostile workplace harassment – suffers the same fatal defects as the

28

United States District Court

For the Northern District of California

1   previous two.

2       Preliminarily, in order to prevail on a hostile workplace claim premised on race,

3   plaintiff must show: (1) that she was subjected to verbal or physical conduct of a racial or

4   sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was

5   sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create

6   an abusive work environment. See Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th

7   Cir.1995). The more outrageous the conduct, the less frequent must it occur to make a

8   workplace hostile. See Ellison v. Brady, 924 F.2d 872, 878 (9th Cir.1991). To determine

9   whether conduct is sufficiently severe or pervasive to violate Title VII, the court looks at all

10  surrounding circumstances, including frequency, severity, whether the alleged conduct is

11  threatening or humiliating, or merely an offensive utterance, and whether it interferes with

12  an employee's work performance. See, e.g., Vasquez v. City of Los Angeles, 349 F.3d

13  634, 649 (9th Cir. 2004). Finally, the allegations of a racially hostile workplace must be

14  assessed from the perspective of a reasonable person belonging to the same racial or

15  ethnic group as the plaintiff. See Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101,

16  116 (2002); McGinest v. GTE Service Corp., 360 F.3d 1103, 1115 (9th Cir. 2004).

17      Here, in response to defendants' claim that there is a lack of evidence supporting

18  plaintiff's hostile workplace claim, plaintiff has stated only that the "substantial credible

19  evidence" in the record belies this argument. Again, however, plaintiff makes no reference

20  to what this evidence is, nor does she provide any detailed explanation of such evidence.

21  Plaintiff's declaration, moreover (assuming it could, standing alone, defeat summary

22  judgment), is utterly devoid of any particularized facts that indicate that plaintiff has suffered

23  any verbal or physical conduct of a racial nature. See generally Abram Decl. ISO Opp.

24  MSJ. Furthermore, defendants have even gone one step beyond merely pointing out

25  plaintiff's lack of evidence, and cited to that portion of plaintiff's deposition testimony in

26  which plaintiff concedes that she never heard Frazier or Hansen make any racial slurs, or

27  talk about black people in a discriminatory fashion. See, e.g., Rolnick Decl. ISO MSJ, Ex.

28

United States District Court

For the Northern District of California

1   A at 37-40, 46.

2        In sum, there is no evidence of any verbal or physical conduct of a racial nature, let

3   alone conduct that was so severe or outrageous that a reasonable person belonging to

4   plaintiff's racial or ethnic group could possibly find that a claim had been stated or proven.

5   The court should find as much as a matter of law, in view of plaintiff's total lack of evidence.

6   Thus, summary judgment in defendants' favor is warranted.

7        4.   Monell Liability

8        The parties both acknowledge that the City itself can only be held liable for the

9   actions of its employees (i.e., either Frazier or Hansen), if plaintiff satisfies the principles of

10  Monell liability.  See, e.g, Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690

11  (1987)(holding that liability against municipality under § 1983 can only attach when a local

12  government's policy or custom is responsible for inflicting injury at the hands of one of its

13  employees); United Federation of African Am. Contractor v. Oakland, 96 F.3d 1204, 1215

14  (9th Cir. 1996)(applying Monell analysis to suit against municipalities pursuant to § 1981).

15       A plaintiff satisfies the principles of Monell liability when a plaintiff demonstrates that

16  an "official municipal policy" of some sort caused the constitutional tort in question.  As

17  defendants and plaintiff both note here, plaintiff can demonstrate as much in one of three

18  ways: the plaintiff can show that the alleged violation in question was committed by the

19  employee pursuant to a longstanding practice or custom; or plaintiff can show that the

20  employee causing the violation in question has "final policymaking authority;" or plaintiff can

21  show that the employee causing the violation had his or her actions "ratified" by the "final

22  policymaker."  See, e.g., Christie v. Iopa, 176 F.3d 1231, 1235-40 (9th Cir. 1999).

23       Here, plaintiff has submitted no evidence establishing the existence of any official

24  municipal policy.  Specifically, plaintiff fails to cite a single piece of evidence that would

25  support the existence of any City custom or policy, Frazier or Hansen's final policymaking

26  authority, or the fact that their actions were ratified by any person or body with final

27  policymaking authority.  Indeed, plaintiff's counsel appears to have cut and pasted sections

28

10

from a prior unrelated brief in fashioning an opposition to defendants' <u>Monell</u> arguments, which obviates any opposition entirely.  While plaintiff's counsel explained the inclusion of unrelated arguments as an unintentional error and argued that Frazier did, in fact, have final policymaking authority, plaintiff's explanatory argument is no substitute for proper evidentiary and legal support.

In short, and consistent with the whole of her case, plaintiff has failed to raise any disputed facts on the issue of the City's <u>Monell</u> liability.  Summary judgment is therefor appropriate in defendant's favor on this issue.  <u>See, e.g., Okoro v. City of Oakland, California</u>, 233 Fed. Appx. 639, 641 (9th Cir. 2007)(absence of the "essential elements of municipal liability under 42 U.S.C. §§1983 and 1981 is fatal to [plaintiff's] case").

C.    Conclusion

For all the foregoing reasons, defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: October 3, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

11